IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MICHAEL FUCHS and VLADISLAV KRASILNIKOV, individually and on behalf of a class of similarly situated individuals, | )<br>)<br>) |
| *Plaintiffs*, | ) |
| v. | ) No. 2017-cv-01752 |
| MENARD, INC., | ) |
| *Defendant*. | ) |

## CLASS ACTION COMPLAINT

Plaintiffs Michael Fuchs and Vladislav Krasilnikov (together "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Menard, Inc. ("Defendant" or "Menards") on their own behalf, and on behalf of a class of individuals who purchased Defendant's dimensional lumber products, to seek redress for Defendant's sale of lumber products that were falsely advertised and labeled as having product dimensions that were not the actual dimensions of the products sold. On behalf of themselves and the proposed class of individuals who purchased Defendant's dimensional lumber products, Plaintiffs seek damages, restitution and injunctive relief against Defendant for selling a product that did not conform to the representations it made to consumers. Plaintiffs, for their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**NATURE OF THE ACTION**

1. Defendant operates a large number of home improvement stores throughout the Midwest region, including throughout Illinois. As a seller of home improvement products, Defendant regularly advertises and sells various construction materials, including a variety of lumber products.

2. Some of the most popular construction materials sold by Defendant are dimensional lumber products, that is, lumber products used in construction and home improvement projects which are commonly sold by reference to three dimensions; length, width, and height.

3. Defendant regularly advertised for sale dimensional lumber products through in-store shelf tags and signage, labels, and flyers, which contained inaccurate and false product dimensions that did not correspond to the actual dimensions of the products being advertised.

4. Defendant's labels and advertisements were false, misleading, and reasonably likely to deceive the public. As a result of Defendant's conduct, consumers – including Plaintiffs and the other members of the proposed Class – purchased dimensional lumber products from Defendant that were not of the same size and quantity as represented.

5. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers in Illinois and elsewhere nationwide, to obtain redress for those who purchased Defendant's dimensional lumber products.

**PARTIES**

6. Plaintiff Michael Fuchs is a natural person and a citizen of Illinois.

7. Plaintiff Vladislav Krasilnikov is a natural person and a citizen of Illinois.

8. Defendant Menard, Inc. is a Delaware corporation with its principal place of business located in Eau Claire, Wisconsin. Menards operates a chain of home improvement stores located in Illinois, and in multiple other states located throughout the Midwest region. Menards advertises and sells its dimensional lumber products to thousands of consumers in Illinois and elsewhere across the country in its retail stores.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction under 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to the instant action.

10. This Court has personal jurisdiction over Defendant because Defendant transacts business in Illinois and a substantial part of the events giving rise to Plaintiffs' claims occurred in Illinois, as Defendant advertised and sold its dimensional lumber products to Plaintiffs in Illinois. Defendant has also advertised, distributed, and sold its dimensional lumber products in Illinois such that it has sufficient minimum contacts with Illinois and/or has sufficiently availed itself of Illinois markets to make it permissible for this Court to exercise jurisdiction over Defendant.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, as Defendant advertised its dimensional lumber products to Plaintiffs in this District, and Plaintiffs purchased the dimensional lumber products in this District.

## COMMON FACTUAL ALLEGATIONS

12. Defendant operates one of the largest chains of home improvement stores in the country.

13. One of the most common and popular products sold by Defendant is dimensional lumber, that is, lumber materials that are identified by their height, width, and length. The most common example of such products are "two-by-four" wooden planks that are often used in home remodeling and construction projects.

14. Defendant advertises its dimensional lumber products on in-store shelf tags and signage, labels, and flyers. Defendant's advertisements contain specific product dimensions for the dimensional lumber products being offered for sale.

15. However, unbeknownst to consumers, the product dimensions advertised by Defendant are not the actual dimensions of the products being advertised. That is, the dimensional lumber products sold by Defendant do not actually have the same dimensions as stated on Defendant's in-store shelf tags and signage, labels, flyers, and other advertisements.

16. In fact, Defendant's dimensional lumber products all have materially smaller dimensions than those represented in its advertisements and product labeling. For example, pieces of "Douglas Fir" wood that are labeled as having the dimensions " 4 x 4 - 10' ", actually measure 3.5" x 3.5" – 10', approximately 23% smaller than advertised. Further, the most commonly used 2" x 4" – 8' framing lumber actually measures 1.5" x 3.5" – 8'.

17. Nowhere does Defendant state that the advertised dimensions are not the actual dimensions of the products, that the advertised dimensions were "nominal" dimensions, or anything else to indicate that the products' actual dimensions differ from those explicitly stated on the advertising and product labeling.

**FACTS SPECIFIC TO PLAINTIFFS**

18. Plaintiff Fuchs visited the Menards store located in Gurnee, Illinois, in or about November 2016.

19. Looking to purchase several dimensional lumber products for some home improvement projects, Plaintiff Fuchs went to the lumber yard at the Gurnee Menards.

20. Specifically, Plaintiff Fuchs was looking for cedar siding planks and 4" x 4" dimensional lumber.

21. In the lumber yard Plaintiff Fuchs saw a large black and white sign, as shown below, advertising " 1 x 6 - 71-72" CEDAR WP-4 SIDING " for $7.49 per plank, and $44.94 for a package of 6 planks.



22. Taking a closer look, Plaintiff Fuchs saw that each plank in the package also had a similar label, as shown below, stating that each plank's dimensions were " 1x6–6' ".



5

23. Relying on Defendant's advertisement and product labeling, and the dimensions stated therein, Plaintiff Fuchs purchased two packages of six planks of the cedar siding for a total price of $89.88.

24. In the Gurnee Menards lumber yard Plaintiff Fuchs also saw another large black and white sign, as shown below, advertising " 4 x 4 - 10' PREMIUM DOUG FIR " for $14.99 per piece.



25. As with the cedar siding, each piece was also individually labeled, as shown below, stating that its dimensions were 4" x 4" – 10'.



26. Relying on Defendant's advertisement and product labeling, and the dimensions stated therein, Plaintiff Fuchs purchased one piece of the 4" x 4" – 10' Douglas Fir lumber.

27. Upon returning home, however, Plaintiff Fuchs measured the cedar siding planks for his project, and determined that each plank's dimensions were not in fact 1" x 6" – 6', but instead measured 0.66" x 5.25" – 6'—approximately 43% less material than advertised and represented by Defendant.

28. Plaintiff Fuchs also measured the 4" x 4" piece of "Douglas Fir" lumber that he purchased, and found that it too did not have the same dimensions as advertised and represented. While the Douglas Fir lumber was advertised as being 4" x 4" – 10', in actuality its dimensions were 3.5" x 3.5" – 10', approximately 23% less material than advertised and represented by Defendant.

29. Similarly, in or about November 2016, Plaintiff Krasilnikov also visited a Menards store located in Fox Lake, Illinois.

30. Looking to purchase 4" x 4" – 8' dimensional lumber, Plaintiff Krasilnikov went to the lumber yard at the Fox Lake Menards.

31. In the lumber yard Plaintiff Krasilnikov saw a large black and white sign, as shown below, advertising " 4 x 4 - 8' WHITE WOOD " for $7.99 per piece.



32. Upon closer inspection, Plaintiff Krasilnikov saw that each piece also had a similar label, as shown below, stating that its dimensions were " 4 x 4 x 8' ".



7

33. Relying on Defendant's advertisement and product labeling, and the dimensions stated therein, Plaintiff Krasilnikov purchased two of the 4" x 4" pieces of white wood lumber for a total price of $15.98.

34. Upon returning home, and in preparation for his project, Plaintiff Krasilnikov also measured the lumber he had purchased. However, much to his surprise, he found that the lumber did not have the same dimensions as explicitly advertised and represented by Defendant. The 4" x 4" – 8' pieces of white wood lumber purchased by Plaintiff Krasilnikov were in fact 3.5" x 3.5" – 8' in size—about 23% less material than advertised and represented by Defendant.

35. Plaintiffs and the other members of the Class were deceived and/or misled by Defendant's representations regarding the dimensions of the dimensional lumber products which they purchased. These representations were a material factor that influenced Plaintiffs' and the other Class members' decisions to purchase Defendant's dimensional lumber products, as dimensional lumber is specifically purchased based on the represented *dimensions* of the lumber product. Plaintiffs and the other members of the Class would not have purchased the dimensional lumber products that they bought from Defendant had they known that Defendant's representations as to the dimensions of these products were false and misleading.

36. As a result, Plaintiffs and the other members of the Class have been damaged by their purchases of Defendant's dimensional lumber products and have been deceived into purchasing a product that they believed had the same dimensions as represented by Defendant, when in fact it was significantly smaller.

37. Defendant has received significant profits from its false marketing and sale of its dimensional lumber products.

8

## CLASS ACTION ALLEGATIONS

38. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on behalf of themselves and a nationwide class (the "Class"), with one subclass (the "Subclass") defined as follows:

(i) The Class: All persons in the United States and its Territories who, within the applicable statute of limitations, purchased Defendant's dimensional lumber products at any of its retail store locations.

(ii) The Subclass: All persons who, within three years prior to the commencement of this action, purchased Defendant's dimensional lumber products at any of its retail store locations in Illinois.

39. Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Class and Subclass. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and Subclass, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and Subclass.

40. Absent a class action, most members of the Class and Subclass would find the cost of litigating their claims to be prohibitive and would have no effective remedy. Unless the Class and Subclass is certified, Defendant will retain the monies it received from the members of the Class and Subclass as a result of its unfair and deceptive conduct.

41. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

42. Defendant has acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

43. Plaintiffs' claims are typical of the claims of the other members of the Class and Subclass as Plaintiffs and the other members of the Class and Subclass have all suffered harm and damages as a result of Defendant's unlawful and wrongful practice of falsely representing and advertising dimensions for its dimensional lumber products that were not the actual dimensions of the products sold.

44. There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Class and Subclass, and those questions predominate over any questions that may affect individual members of the Class and Subclass. Common questions for the Class and Subclass include, but are not limited to, the following:

(a) Whether Defendant advertised, represented, and/or warranted that its dimensional lumber products had certain dimensions;

(b) Whether Defendant's dimensional lumber products had the same dimensions as advertised and warranted;

(c) Whether Defendant's advertising of its dimensional lumber products was false or misleading;

(d) Whether Defendant's conduct violates public policy;

(e) Whether Defendant's conduct violated the Illinois Consumer Fraud Act and other such similar statutes;

(f) Whether as a result of Defendant's misrepresentations of material facts related to the dimensions of its dimensional lumber products, Plaintiffs and the other members of the Class and Subclass have suffered ascertainable monetary losses;

(g) Whether Plaintiffs and the other members of the Class and Subclass are entitled to monetary and/or restitutionary relief or other remedies, and, if so, the nature of such remedies; and

(h) Whether Defendant should be enjoined from continuing to engage in such conduct.

## COUNT I
### For Violations of Consumer Protection Laws
### (on behalf of the Class and the Subclass)

45. Plaintiffs hereby incorporate the above allegations by reference as though fully set forth herein.

46. The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 502/1 *et seq.* ("ICFA"), as well as materially identical consumer protection statutes enacted in other states where Menards operates its stores – Indiana (Ind. Code § 24-5-0.5-1 *et seq.*), Kansas (Kan. Stat. Ann. § 50-623 *et seq.*), Kentucky (Ky. Rev. Stat. § 367.110 *et seq.*), Michigan (Mich. Comp. Laws Ann. § 445.901 *et seq.*), Minnesota (Minn. Stat. §§ 325F.67, 325F.68 *et seq.*), Missouri (Mo. Rev. Stat. § 407.010.1 *et seq.*), Nebraska (Neb. Rev. Stat. § 59-1601 *et seq.*), South Dakota (S.D. Codified Laws § 37-24-1 *et seq.*), North Dakota (N.D. Cent. Code § 51-15-01 *et seq.*), Ohio (Ohio Rev. Code § 1345.01 *et seq.*), Wisconsin (Wis. Stat. Ann. §§ 100.18, 100.20), and Wyoming (Wyo. Stat. Ann. § 40-12-101 *et seq.*) – prohibit deceptive acts and practices in the sale of products such as Defendant's dimensional lumber products.

47. Plaintiffs and the other members of the Class and Subclass are "consumers" or "persons," as defined under the ICFA and the above listed consumer protection laws.

48. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

49. Defendant's actions in affirmatively representing and advertising dimensions for its dimensional lumber products that were not the actual dimensions of the products sold offends public policy, has caused and continues to cause substantial injury to consumers, and constitutes an unfair and deceptive trade practice.

50. Upon information and belief, and given the fact that Defendant managed and maintained all of the inventory for its products, Defendant knew or should have known at all relevant times that its dimensional lumber products did not have the same dimensions as represented and advertised by Defendant, but Defendant nonetheless continued to advertise and sell its dimensional lumber products using such false representations.

51. Defendant intended for consumers to rely on its representations regarding the dimensions of its dimensional lumber products when choosing to purchase such products. Dimensional lumber products are specifically marketed and sold according to their *dimensions*, and consumers rely on such representations so that they may make an informed decision as to the size and quantity of dimensional lumber product they need to purchase for their home improvement projects.

52. Plaintiffs and the other members of the Class and Subclass did reasonably rely on Defendant's misrepresentations in choosing to purchase Defendant's dimensional lumber products, and would not have purchased the dimensional lumber products that they bought from Defendant, or would have paid materially less for them, had Defendant not made the false and deceptive representations regarding their dimensions.

53. As a direct and proximate cause of Defendant's deceptive and unfair trade practices, Plaintiffs and the other members of the Class and Subclass suffered actual damages,

including monetary losses for the purchase price of the dimensional lumber products which did not have the same dimensions as advertised and contained less lumber material.

54. Defendant's conduct is in violation of the ICFA and other states' consumer protection laws as listed above, and pursuant to 815 ILCS 505/10a and other such states' consumer protection laws, Plaintiffs and the other members of the Class and Subclass are entitled to damages in an amount to be proven at trial, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## COUNT II
### Breach of Express Warranty
### (on behalf of the Class and the Subclass)

55. Plaintiffs hereby incorporate the above allegations by reference as though fully set forth herein.

56. Through its in-store signage, product labeling, and advertising, Defendant expressly warranted to Plaintiffs and the other members of the Class that its dimensional lumber products have the same dimensions as represented on such signage, labeling, and advertising.

57. These affirmations of fact and promises regarding the dimensions of its dimensional lumber products were part of the basis of the bargain between Defendant and Plaintiffs and the other members of the Class. Plaintiffs and the other members of the Class would not have purchased the dimensional lumber products that they bought from Defendant, or would have paid materially less for them, had they known that these affirmations and promises were false.

58. Defendant breached the express warranties it represented about its dimensional lumber products and their qualities because, as set forth above, the dimensional lumber products

13

sold to Plaintiffs and the other members of the Class did not actually have the same dimensions as warranted by Defendant.

59. As a direct and proximate result of Defendant's breach of its express warranties, Plaintiffs and the members of the Class have been damaged in an amount to be determined at trial.

### COUNT III
### Breach of Implied Warranty
### (on behalf of the Class and the Subclass)

60. Plaintiffs hereby incorporate the above allegations by reference as though fully set forth herein.

61. The implied warranty of merchantability is codified in Section 2-314 of the Uniform Commercial Code ("UCC") and requires that goods have to be fit for the ordinary purposes for which goods of that type are used; have adequate labeling; and conform to any promises or affirmations made on any product label.

62. Most states' laws provide for enforcement of the implied warranty of merchantability through their adoption of the UCC, including in Illinois pursuant to 810 ILCS 5/2-314, as well as other states where Menards operates its stores—Indiana (Ind. Code § 26-1-2-314), Iowa (Iowa Code § 554.2314), Kansas (Kan. Stat. Ann. § 84-2-314), Kentucky (Ky. Rev. Stat. § 355.2-314 ), Michigan (Mich. Comp. Laws Ann. § 440.2314), Minnesota (Minn. Stat. § 336.2-314), Missouri (Mo. Rev. Stat. § 400.2-314), Nebraska (Neb. UCC 2-314), South Dakota (S.D. Codified Laws § 57A-2-314), North Dakota (N.D. Cent. Code § 41-02-31), Ohio (Ohio Rev. Code § 1302.26), Wisconsin (Wis. Stat. Ann. § 402.314), and Wyoming (Wyo. Stat. Ann. § 34.1-2-314).

63. Defendant, as the marketer, distributor, and seller of the dimensional lumber products purchased by Plaintiffs and the other members of the Class, is a merchant.

64. Plaintiffs and the other Class members purchased Defendant's dimensional lumber products in a consumer transaction.

65. The dimensional lumber products sold by Defendant were not fit for the ordinary purposes for which goods of that type are used because they were labeled as having specific dimensions which were not the actual dimensions of the product sold.

66. The dimensional lumber products sold by Defendant were not adequately labeled because they were labeled as having specific dimensions which were not the actual dimensions of the product sold.

67. The dimensional lumber products sold by Defendant did not conform to the promises and affirmations made by Defendant on the product labeling because they were labeled as having specific dimensions which were not the actual dimensions of the product sold.

68. Plaintiffs and the other Class members did not receive the dimensional lumber products that were warranted to them, as the products they purchased contained substantially less lumber material and had different dimensions than the products they were promised and which they expected.

69. As a result of Defendant's breach of warranty, Plaintiffs and the other Class members suffered damages by purchasing dimensional lumber products which they would have not purchased, or would have paid materially less for, had they known that the products were not as warranted.

## COUNT IV
## Unjust Enrichment
### (in the alternative to the Second Cause of Action and on behalf of the Class and the Subclass)

70. Plaintiffs hereby incorporate the allegations set forth in Paragraphs 1–44 above.

71. Plaintiffs and the other members of the Class conferred a benefit on Defendant by purchasing its dimensional lumber products.

72. It is inequitable and unjust for Defendant to retain the revenues obtained from Plaintiffs' and the other Class members' purchases of Defendant's dimensional lumber products because Defendant knowingly misrepresented the qualities of its dimensional lumber products and Plaintiffs and the other members of the Class would not have purchased the dimensional lumber products that they bought from Defendant, or would have paid materially less for them, had Defendant not made these misrepresentations.

73. Accordingly, because Defendant will be unjustly enriched if it is allowed to retain such funds, Defendant must pay restitution to Plaintiffs and the other Class members in the amount which Defendant was unjustly enriched by each of their purchases of its dimensional lumber products.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and Subclass, pray for the following relief:

1. An order certifying the Class and Subclass as defined above;

2. An award of actual or compensatory damages, or, in the alternative, disgorgement of all funds unjustly retained by Defendant as a result of its unfair and deceptive sales practices;

3. Injunctive relief prohibiting Defendant's unfair and deceptive advertising practices;

4. An award of reasonable attorney's fees and costs; and

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: March 3, 2017

Michael Fuchs and Vladislav Krasilnikov, individually and on behalf of a class of similarly situated individuals

/s/ Eugene Y. Turin
One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Attorneys for Plaintiffs and the Class*