**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL FUCHS, et al., | |
| Plaintiffs, | No. 17-cv-1752 |
| v. | Honorable Edmond E. Chang |
| MENARD, INC., | |
| Defendant. | |

**DEFENDANT MENARD, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF**
**CIVIL PROCEDURE 12(B)(1), (2), AND (6)**

Daniel J. Delaney (ARDC No. 6201067)
Matthew M. Morrissey (ARDC No. 6302575)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000
Email: daniel.delaney@dbr.com
Email: matthew.morrissey@dbr.com

*Counsel for Defendant Menard, Inc.*

Matthew J. Fedor (NJ Bar No. 029742002)
DRINKER BIDDLE & REATH LLP
600 Campus Dr.
Florham Park, New Jersey 07932
Tel:    (973) 549-7000
Fax:    (973) 360-9831
Email: matthew.fedor@dbr.com

*Counsel for Defendant Menard, Inc.*
*Pro Hac Vice Application Pending*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

FACTS ................................................................................................................... 2

    I. The Standards That Govern Lumber Size ................................................ 2

    II. Plaintiffs' Purchases of Lumber from Menards Stores ............................ 4

ARGUMENT ......................................................................................................... 5

    I. Plaintiffs Have Not Suffered Any Concrete Injury and Thus Lack Article III

       Standing ................................................................................................ 5

    II. Plaintiffs Fail to State a Valid Claim for Relief ...................................... 6

       A. Legal Standards for a 12(b)(6) Motion ......................................... 6

       B. Plaintiffs' ICFA Claims Fail as a Matter of Law Because the Shelf

          Tags and Product Labels Are Not False, Misleading, or Otherwise

          Deceptive ................................................................................... 7

       C. Plaintiffs Cannot Establish that They Suffered Actual Damages ................. 10

       D. Plaintiffs Cannot Allege a Material Misrepresentation ................................ 11

       E. Plaintiffs' Breach of Warranty Claims Fail ................................................ 12

          1. Plaintiffs Did Not Provide the Requisite Notice ................................ 12

          2. Plaintiffs Cannot Allege the Existence of an Express Warranty ........ 12

          3. Plaintiffs' Implied Warranty Claim Fails as a Matter of Law ........... 13

          4. Plaintiffs' Claims for Breach of Warranty Are Facially

             Deficient Due to the Lack of a Deceptive or Misleading

             Statement ..................................................................................... 14

       F. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law ..................... 14

    III. This Court Lack Personal Jurisdiction over Menards for Nonresident Claims ........ 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abramov v. Home Depot, Inc.*,
  No. 17-cv-1860 (N.D. Ill., filed Mar. 8, 2017) ...........................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2008).............................................................................................7

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
  492 F.3d 841 (7th Cir. 2007) .............................................................................14

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill.2d 100 (Ill. 2005)......................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................7

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ...............................................................................7

*Camasta v. Jos. A. Bank Clothier, Inc.*,
  761 F.3d 732 (7th Cir. 2014) .........................................................................7, 11

*Caterpillar, Inc. v. Usinor Industeel*,
  393 F.Supp.2d 659 (N.D. Ill. 2005) ...................................................................11

*Comark Merch., Inc. v. Highland Grp., Inc.*,
  932 F.2d 1196 (7th Cir. 1991) ...........................................................................13

*Connick v. Suzuki Motor Company, LTD*,
  174 Ill.2d 482 (Ill. 1996).................................................................................7, 12

*Daimler AG v. Bauman*,
  134 S.Ct. 746 (2014) ..........................................................................................15

*Demedicis v. CVS Health Corp.*,
  No. 16-cv-5973, 2017 WL 569157 (N.D. Ill. Feb. 13, 2017) ............................15

*Eike v. Allergan, Inc.*,
  850 F.3d 315 (7th Cir. 2017) ...............................................................................6

*Evitts v. DaimlerChrysler Motors Corp.*,
  359 Ill.App. 504 (1st Dist. 2005) .......................................................................11

# TABLE OF AUTHORITIES

*Galanis v. Starbucks Corp*,
No. 16 C 4705, 2016 U.S. Dist. LEXIS 142380 (N.D. Ill. Oct. 14, 2016) ...................8, 10, 14

*Halperin v. Int'l Web Servs., LLC*,
123 F.Supp.3d 999 (N.D. Ill. 2015) ......................................................................................7

*Ibarrola v. Kind, LLC*,
83 F.Supp.3d 751 (N.D. Ill. 2015) ............................................................................ *passim*

*Indus. Hard Chrome, Ltd v. Hetran, Inc.*,
64 F.Supp.2d 741 (N.D. Ill. 1999) .....................................................................................14

*Irwin v. Jimmy John's Franchise, Inc.*,
175 F.Supp.3d 1064 (C.D. Ill. 2016) .................................................................................15

*Kim v. Carter's Inc.*,
398 F.3d 362 (7th Cir. 2010) .......................................................................................10, 11

*Kirk v. Stineway Drug Store Co.*,
38 Ill.App.2d 415 (1st Dist. 1963) .....................................................................................13

*Lee v. City of Chicago*,
330 F.3d 456 (7th Cir. 2003) ...............................................................................................5

*Lohrenz v. Country Mut. Ins. Co.*,
198 Ill.App.3d 810 (3rd Dist. 1989) ...................................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................................5

*Mackinac v. Arcadia Nat'l Life Ins. Co.*,
217 Ill.App.3d 138 (1st Dist. 1995) ...................................................................................10

*Menominee Indian Tribe of Wisc. v. Thompson*,
161 F.3d 449 (7th Cir. 1998) ...............................................................................................2

*Muir v. Playtex Prods., LLC*,
983 F.Supp.3d 980 (N.D. Ill. 2013) .....................................................................................9

*Mydlach v. DiamlerChrysler Corp.*,
226 Ill.2d 307 (Ill. 2007)....................................................................................................14

*Phillips v. DePaul Univ.*,
2014 IL App (1st), 122817....................................................................................................8

*S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*,
401 Ill.App.3d 424 (1st Dist. 2010) ...................................................................................14

# TABLE OF AUTHORITIES

*Spector v. Mondelez Int'l, Inc.*,
    178 F.Supp.3d 657 (N.D. Ill. 2016) ................................................................10, 14

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..............................................................................................5

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
    316 F.R.D. 240 242 (E.D. Wis. 2016) ......................................................................9

*Szajna v. Gen. Motors Corp.*,
    115 Ill.2d 294 (Ill. 1986) ........................................................................................13

*White v. Daimler Chrysler Corp.*,
    368 Ill.App.3d 278 (1st Dist. 2006) ..................................................................11, 12

## STATUTES, RULES & REGULATIONS

15 CFR § 10.0(a) ............................................................................................................2

15 CFR § 10.0(a)(2) .......................................................................................................2

15 CFR § 10.0(b) ............................................................................................................2

15 CFR § 10.0(e) ............................................................................................................2

15 CFR § 10.1(a) ............................................................................................................2

15 CFR § 10.1(d) ............................................................................................................2

15 CFR §10.1(e) .............................................................................................................2

15 U.S.C. § 272(a) ..........................................................................................................2

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/ ..............1, 10, 11

Illinois Uniform Commercial Code, 810 ILCS 5/ ...........................................12, 13, 14

Illinois Weights and Measures Act, 225 ILCS 470/ .......................................................4

## OTHER AUTHORITIES

NIST, *NIST Handbook 130: Uniform Law and Regulations in the Areas of Legal
    Metrology and Engine Fuel Quality* (December 2016) .......................................3, 10

NIST, *Voluntary Product Standard PS 20-15: American Softwood Lumber
    Standard* (April 2015) ...............................................................................3, 4, 5, 9

## INTRODUCTION

This putative class action challenges industry standard descriptions for common lumber products such as two-by-fours (2x4s), four-by-fours (4x4s), and the like. Retailers such as Defendant Menard, Inc. d/b/a Menards ("Menards") did not choose the names of these common lumber products, nor did they set the underlying dimensions. Instead, due to the obvious need for uniformity in construction materials used throughout the United States, the thickness and width specifications for 2x4s, 4x4s, and other similar lumber products was established long ago by national standards. These standards ensure that consumers who buy a 2x4 or a 4x4 will obtain a standardized product whether they buy it at a Menards store or elsewhere.

Both Plaintiffs here allege they visited Menards stores in Illinois to purchase lumber for home improvement projects, including standard 4x4s. Plaintiffs allege the wood they bought contained less material than supposedly was "represented" on the shelf tags and product labels because the tags and labels said "4x4" but did not explain that the actual size of the product was 3½ inches by 3½ inches. Of course, the tags and labels did *not* say that the actual size of the lumber was 4 inches by 4 inches (or 4" x 4"). And – although they ignore the issue entirely – Plaintiffs do not dispute that 3½ inches by 3½ inches is the *exact* size a 4x4 is supposed to be in accordance with lumber sizes established by the National Institute of Standards and Technology (NIST), which have been adopted in Illinois. As NIST standards explain, 4 inches by 4 inches is merely the "nominal" (*i.e.*, in name only) size of a 4x4, which "describe[s] approximate, rather than actual, sizes of lumber." NIST expressly cautions that "[n]o inference shall be drawn that the 'nominal' sizes are dressed [or actual] sizes." **In fact, dimension lumber with an actual size of 4" x 4"** *does not exist*.

Nevertheless, Plaintiffs insist they were deceived and misled, and received less material than supposedly was represented. They assert violations of the Illinois Consumer Fraud and

1

Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA"), breach of express and implied warranties, and unjust enrichment, and they seek damages and injunctive relief on behalf of themselves and a putative nationwide class of consumers. *See* Compl. ¶¶39-74.

As explained below, Plaintiffs lack Article III standing. Plaintiffs received exactly what they were supposed to receive – lumber that complies with applicable standards – and thus have not suffered an injury-in-fact. Additionally, the use of the customary and commonly-known names of standardized lumber products on shelf tags and product labels does not violate ICFA. For these reasons, and for other reasons explained below, Plaintiffs have failed to state a claim upon which relief can be granted. Thus, the Court should dismiss the Amended Complaint.

## FACTS

### I.    The Standards That Govern Lumber Size

In recognition of the importance, advantages, and benefits of standardization activities, the U.S. Department of Commerce has promulgated regulations authorizing the development of product standards in a variety of industries, including the lumber industry. 15 C.F.R. §§ 10.0 (a)-(b), 10.1(a), (d)-(e). NIST is part of the Department of Commerce and administers the product standards publication program. 15 U.S.C. § 272(a); 15 CFR § 10.0(e). The product standards are intended to foster a better understanding between manufacturers, distributors, users, and consumers. 15 CFR § 10.0(a)(2).

NIST product standards for lumber are set forth in NIST's American Softwood Lumber Standard ("Lumber Standard") – which was developed by the American Lumber Standard Committee – and NIST Handbook 130.[1] The Lumber Standard establishes size requirements for

---

[1] For the Court's convenience, copies of the Lumber Standard and the NIST Handbook are attached as Exs. A and B to the Declaration of Matthew Morrissey, which is attached hereto as Ex. 1. Because NIST standards establishing lumber sizes have been adopted in Illinois, the Court can consider these documents on a motion to dismiss. Moreover, the Court can take judicial notice of the documents. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

lumber in the United States, and the NIST Handbook expressly incorporates the standardized sizes. *NIST Handbook*, §§ 2.10, 2.10.1.13; pp. 111-112.

The Lumber Standard explicitly distinguishes between the "nominal" size of a piece of lumber and its "actual" size. *Lumber Standard*, §§ 2.16, 3.2, 3.4, 5.2. The nominal size is the "label designation for lumber size categories that does not reflect the dressed [or actual] size."[2] *Lumber Standard*, § 2.16. Rather, "[n]ominal sizes are customary dimensions to describe approximate, rather than actual, sizes of lumber." *NIST Handbook*, § 2.10, p. 111. Indeed, "'[n]ominal sizes' were originally derived from the dimensions of rough lumber **before surfacing** and are ***always* greater than the actual or minimum dressed dimensions**; thus, a dry '2x4' is surfaced to the actual dimensions of 1½ in × 3½ in." *Id.* (emphasis added); *Lumber Standard*, § 2.16 (By definition, "nominal size is greater than the dressed [or actual] size."). NIST explains that the "use of 'nominal' sizes in this Standard follows the practice of the industry." *Lumber Standard*, § 3.4.4. Critically, NIST cautions that "**[n]o inference shall be drawn that the 'nominal' sizes are dressed [or actual] sizes**." *Id.* (emphasis added).

NIST standards include detailed Tables setting forth the standardized nominal and dressed (surfaced) sizes of various types of lumber. *Lumber Standard*, T. 1-4. Pursuant to NIST standards, a 4x4 has an established nominal size of 4" thick by 4" wide, and a dressed size of 3½" thick by 3½" wide. *Id.* at T.3. A 1x6 piece of cedar siding has an established nominal size of 1" thick by 6" wide and a dressed size of 11/16" thick by 5 3/8" wide. *Id.* at T.2 & note a, b.[3] Critically, NIST also expressly recognizes that "[l]umber will change in dimension (shrink or

---

[2] "Dressed" lumber is "lumber that has been surfaced by a machine (to attain smoothness of surface and uniformity of size)." *Lumber Standard* § 3.3.2. "Minimum dressed size" is "[t]he standardized width and thickness at which lumber is dressed [*i.e.*, surfaced] when manufactured." *NIST Handbook*, § 2.10.1.13, p. 112. "Dressed size" or "minimum dressed size" is sometimes referred to as the "actual" size of a piece of lumber after surfacing, although the actual size of a given piece of lumber may ultimately vary due to allowable shrinkage or expansion. *NIST Handbook*, § 2.10, p. 111; *Lumber Standard* § 6.2.3.1 & note 4.

[3] A 4x4 is "dimension" lumber governed by Table 3 of the Lumber Standard. By contrast, cedar siding is "siding" – specifically, tongue & groove siding – which is governed by Table 2, including notes a and b.

expand)" because of the inherent characteristics of the product. *Id.* § 5.2. Due to this potential for shrinkage or expansion, the Lumber Standard allows for minor deviations from the published dressed sizes and establishes a specific tolerance level. *Id.* § 6.2.3.1 & note 4. The State of Illinois has adopted NIST standards establishing lumber sizes. 225 ILCS 470/8.

## II.  **Plaintiffs' Purchases of Lumber from Menards Stores**

Plaintiff Michael Fuchs alleges he went to a Menards store to purchase dimension lumber for a home improvement project. Compl. ¶¶19-20. He purchased a 4x4 and two packages of 1x6 cedar siding. *Id.* ¶¶22-27. The shelf tags and product labels do not contain any words signifying a description of the dimensions of the lumber such as "width" or "thickness." Although the tags and labels state "4x4" and "1x6," it is undisputed that neither contain the word "inch," "inches," or the inch mark (") in relation to the thickness and width of the lumber. *Id.* ¶¶19-27. The tags and labels do contain foot (') and inch (") marks regarding the length but there is no allegation that the length was inaccurate. *Id.* Similarly, Plaintiff Vladislav Krasilnikov alleges he went to a Menards store to purchase 4x4 dimension lumber. *Id.* ¶¶30-34. The shelf tag and product label for his purchase are comparable to the ones identified by Fuchs. *Id.*

Plaintiffs admit the 4x4s had dimensions of 3½" wide by 3½" thick, though they claim this did not match what purportedly was "represented." *Id.* ¶¶29, 35. As to the 1x6 siding, Plaintiff Fuchs alleges that it had dimensions of .66" thick by 5¼" wide. *Id.* ¶28. These allegations confirm the thickness and width of the lumber Plaintiffs bought complies with NIST standards.[4] And Plaintiffs do not allege that dimension lumber that is 4" thick by 4" wide or cedar siding that is 1" thick by 6" wide are real products available for purchase elsewhere.

---

[4]  Although the alleged thickness of the 1x6 cedar siding Fuchs purchased varies slightly from the dressed size set forth in the Lumber Standard, it still complies with NIST standards. In that regard, Fuchs alleges that the dimensions of the 1x6 cedar siding were 0.66" thick by 5¼" (5.25) wide, whereas the Lumber Standard sets forth actual dimensions of 11/16" (.6875) by 5⅜" (5.375). *Compare* Compl. ¶28 *with Lumber Standard*, T.2, note a, b. Candidly, we suspect this *de minimis* discrepancy is the result of

**ARGUMENT**

**I.** **Plaintiffs Have Not Suffered Any Concrete Injury and Thus Lack Article III Standing**

Plaintiffs bear the burden of establishing that they have standing. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). A plaintiff must demonstrate three elements to establish Article III standing: (1) an injury-in-fact that is (a) concrete and particularized; and (b) actual or imminent; (2) the injury must be traceable to the defendant's conduct; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To be concrete, the injury must be "de facto," meaning it "must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). The injury must be "real and not abstract." *Id.*

Here, Plaintiffs have not plausibly alleged a concrete and particularized injury-in-fact sufficient to satisfy the Article III standing requirements. Plaintiffs do not allege that the lumber they purchased was defective or inferior in quality, that it did not perform as they expected, or that it otherwise was unsuitable for their respective projects. Instead, Plaintiffs' claims are based entirely on the thickness and width of the product. In fact, Plaintiffs' own allegations show that the size of the lumber they purchased complies with applicable NIST standards.[5] Thus, regardless of what the shelf tags and product labels purportedly said or did not say, the undeniable fact remains that Plaintiffs received exactly what they were supposed to receive.[6]

Plaintiffs suggest they were somehow deceived by the shelf tags and product labels and that they suffered harm because they either "would not have purchased the dimensional lumber

---

imprecise measurement by Fuchs. But even assuming the alleged measurement is accurate, as discussed above NIST standards tolerate slight deviations from the established dressed size to account for shrinkage or expansion. The alleged variance of .0275" (which is less than 1/32") in thickness and 1/8" in width is well within the allowable range. *See Lumber Standard*, §§ 5.2, 6.2.3.1, n. 4.

[5] *Compare* Compl. ¶¶28-29, 35, *with Lumber Standard*, T.2 & note a., b., T.3.

[6] If this Court concludes Plaintiff Fuchs' allegations regarding the 1x6 cedar siding are sufficient to create doubt whether he received a compliant product, Menards respectfully requests that the Court order jurisdictional discovery limited to the issue of the precise size of the cedar siding Fuchs purchased.

products that they bought *from Defendant*" or "would have paid materially less for them."  *See* Compl. ¶36 (emphasis added).  However, this alleged harm is neither concrete nor particularized.  Indeed, the purported harm is entirely hypothetical and not "real" **because 4x4 dimension lumber with an actual size of 4" by 4" and 1x6 cedar siding with an actual size of 1" by 6" does not exist**.  *See Lumber Standard*, T.2 & note a, b., T.3.  Plaintiffs thus could not have purchased the hypothetical products *anywhere*, much less at a lower price.  Rather, as NIST standards establish (and as a basic Google search reveals), in order to qualify as a 4x4, a piece of dimension lumber must be surfaced to a size of 3½" thick by 3½" wide (and 1x6 cedar siding is surfaced to 11/16" by 5⅜").  *Id.*  It is telling indeed that Plaintiffs' attorneys have filed a nearly identical ICFA lawsuit alleging that a 4x4 purchased from Home Depot was 3½" x 3½".  *See Abramov v. Home Depot, Inc.*, No. 17-cv-1860 (N.D. Ill., filed Mar. 8, 2017).[7]

In *Eike v. Allergan, Inc.*, the Seventh Circuit held that an ICFA claim must be dismissed because plaintiffs failed to allege an injury-in-fact resulting from defendants' production and marketing of eye drops, which plaintiffs claimed were larger than necessary.  850 F.3d 315, 318 (7th Cir. 2017).  The court explained, "[t]he fact that a seller does not sell the product you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment…"  *Id.*  A plaintiff cannot "sue a company and argue only – 'it could do better by us.'"  *Id.*  In such a case, the plaintiff fails to allege an injury-in-fact and the claims must be dismissed.  *Id.*  As in *Eike*, Plaintiffs have not suffered an actionable injury-in-fact here, and their claims should be dismissed for lack of standing.

## II.   Plaintiffs Fail to State a Valid Claim for Relief

### A.  Legal Standards for a 12(b)(6) Motion

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient

---

[7] Home Depot filed a Motion to Dismiss on April 20, 2017.  *Abramov*, No. 17-cv-1860, ECF No. 16.

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008). The factual allegations must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558 (2007).

### B. Plaintiffs' ICFA Claims Fail as a Matter of Law Because the Shelf Tags and Product Labels Are Not False, Misleading, or Otherwise Deceptive

To state a claim under ICFA, Plaintiffs "must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 190-91 (Ill. 2005) (internal quotations omitted); *see Ibarrola v. Kind, LLC*, 83 F.Supp.3d 751, 756 (N.D. Ill. 2015).[8] ICFA claims are subject to the heightened pleading standard for fraud set forth in Rule 9(b), and a party asserting an ICFA claim must state with particularity the circumstances constituting fraud. *Kind*, 83 F.Supp.3d at 755; *see Connick v. Suzuki Motor Company, LTD*, 174 Ill.2d 482, 501 (Ill. 1996).[9]

A court should dismiss a complaint alleging an ICFA violation if the challenged statement was not deceptive as a matter of law. *Kind*, 83 F.Supp.3d at 756 (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001)). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober*, 246 F.3d at 938. A

---

[8] Because Plaintiffs are Illinois consumers who assert claims arising from transactions in Illinois, they only have claims under Illinois law. Addressing the potential claims of absent putative class members that might arise under the laws of other states would not be appropriate at this stage. If Plaintiffs' claims are dismissed as a result of this Motion, Plaintiffs cannot represent a class and the putative class members' claims arising under both Illinois law and the laws of other states are subject to dismissal. *See, e.g.*, *Halperin v. Int'l Web Servs., LLC*, 123 F.Supp.3d 999, 1009 (N.D. Ill. 2015).

[9] Plaintiffs' bare recitation of the elements of an "unfairness" claim, without supporting factual allegations, cannot establish a violation of ICFA. Compl. ¶50; *Camasta v. Jos. A. Bank Clothier, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (ICFA "unfairness" claim was subject to Rule 9(b) pleading standard and ultimately failed because the complaint included only the bare elements of the claim without factual support). Any purported ICFA "unfairness" claim must be dismissed because it is facially deficient.

court analyzing whether a statement is deceptive "must consider whether the act was deceptive as reasonably understood in light of all the information available to plaintiffs." *Phillips v. DePaul Univ.*, 2014 IL App (1st), 122817, ¶44; *Galanis v. Starbucks Corp*, No. 16 C 4705, 2016 U.S. Dist. LEXIS 142380, at *5-6 (N.D. Ill. Oct. 14, 2016). Moreover, courts routinely dismiss ICFA claims when it is determined that a statement on a product's label is not deceptive, misleading or false and when no reasonable consumer could have been misled by the representation. *See, e.g.*, *Galanis*, 2016 U.S. Dist. LEXIS 142380, at *8-9 (dismissing ICFA claim because Starbucks iced beverage labels were not deceptive).

For example, in *Ibarrola v. Kind, LLC*, the plaintiff alleged she was misled by the company's labels because she believed the products contained only "naturally occurring, unrefined sugars" when in fact, the products contained sugar cane that had been at least partially refined. *Id.* at 756-59. The court dismissed the plaintiff's ICFA claim and held that the product labels at issue were not deceptive because reasonable consumers "do not believe that they are eating straight sugar cane" because "'naturally occurring, unrefined sugars,' derived from sugar cane do not exist." *Id.* 758-59.

Here, as in *Kind*, Plaintiffs' IFCA claims fail because they have not identified a representation about the actual size of the lumber at issue that is false, misleading, or likely to deceive a reasonable consumer. To begin with, 4x4 dimension lumber with an actual size of 4" by 4" and 1x6 cedar siding with an actual size of 1" by 6" do not exist. Thus, no reasonable consumer would be deceived by shelf tags and labels that merely utilize a customary product name such as 4x4. Moreover, it is undisputed that the tags and labels do not contain any words signifying a description of the dimensions of the lumber such as "width" or "thickness." The tags and labels likewise do not contain the word "inch," "inches," or the inch mark (") in relation to the thickness or width of the lumber.

Plaintiffs repeatedly say 4"x4" and 1"x6" when discussing the purported advertising they challenge. Compl. ¶¶27-29, 34-35. However, the Court should disregard these allegations because *Plaintiffs* unilaterally inserted the inch marks (") for the obvious purpose of trying to suggest the existence of a representation that is not contained in the ads themselves. In fact, the pictures of the shelf tags and product labels Plaintiffs attached to the complaint merely state 4x4 and 1x6 *without* the inch marks ("). Compl. ¶¶22-23, 25-26, 32-33. These pictures supersede Plaintiffs' self-serving, unsupported, and contradictory allegations. *Muir v. Playtex Prods., LLC*, 983 F.Supp.3d 980, 983 (N.D. Ill. 2013) ("To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence.").

Of course, 4x4 and 1x6 are not representations of actual size, nor are they meant to be; they are simply the *names* of standard lumber products. These names derive from the nominal size of the products, not their actual size. *Lumber Standard*, § 2.16 (referring to nominal size as the "label designation … that does not reflect the [actual size].")." Indeed, NIST standards make clear that "**[n]o inference shall be drawn that the 'nominal' sizes are dressed [or actual] sizes.**" *Id*. § 3.4.4 (emphasis added). So, while Plaintiffs complain that the tags and labels are false and misleading because they fail to distinguish between the nominal and actual thickness and width of the lumber, the reality is that the tags and labels plainly are *not* false, misleading, or otherwise likely to deceive a reasonable consumer because the tags and labels do not contain *any* representation whatsoever regarding the lumber's actual thickness or width.[10] Furthermore, as previously noted, Plaintiffs have not been defrauded because the lumber products they purchased

---

[10] In fact, due to the recognized variances that naturally occur in lumber products due to shrinkage or expansion, it would be confusing to consumers and unreasonable to lumber retailers to require shelf tags and labels to identify the exact size of each individual piece of lumber. *See, e.g.*, *Lumber Standard*, § 6.2.3.1 & note 4 (discussing natural size variances); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 316 F.R.D. 240 242 (E.D. Wis. 2016) (stating that consumer fraud claims against Subway for selling sandwiches less than a foot long were "weak" because "[d]ue to the natural variability in [the baking] process . . . [s]ome loaves will be slightly shorter and wider than others").

comply with the applicable standards. This is fatal to Plaintiffs' ICFA claim. *See Spector v. Mondelez Int'l, Inc.*, 178 F.Supp.3d 657, 665 (N.D. Ill. 2016) (dismissing an ICFA claim because plaintiff could not establish that the product label contained a deceptive or false representation).

Any reasonable consumer would have known that 4x4 and 1x6 were not the actual sizes of the products at issue because it has been common knowledge for decades. For example, the NIST Handbook and its predecessors have distinguished between a piece of lumber's actual and nominal size since at least 1971. *See NIST Handbook*, T.1; pp. 93, 114. Moreover, as a practical matter, the lumber is readily available for in-store inspection. To the extent a consumer had any doubt regarding the actual dimensions, he or she could easily measure the wood using one of the many rulers available in Menards stores.[11] Based on the totality of information available, the shelf tags and product labels simply are not false, misleading or deceptive to a reasonable consumer as a matter of law. *See Kind*, 83 F.Supp.3d at 756-59. As a result, Plaintiffs have failed to state a viable ICFA claim. *See id.*; *Galanis*, 2016 U.S. Dist. LEXIS 142380, at *8-9; *Spector*, 178 F.Supp.3d at 665.

### C. Plaintiffs Cannot Establish that They Suffered Actual Damages

Plaintiffs' ICFA claim is facially deficient because the Complaint fails to allege that Plaintiffs suffered "actual damages" as a proximate result of Menards' conduct. The "actual damages" element of a private ICFA action requires that plaintiffs suffer "actual pecuniary loss" as a result of the defendant's violation of the act. 815 ILCS 505/10a. For instance, in *Kim v. Carter's Inc.*, the Seventh Circuit upheld the dismissal of an ICFA claim due to the plaintiff's failure to establish actual damages. 598 F.3d 362, 365-66 (7th Cir. 2010). The *Kim* plaintiff

---

[11]Additionally, Plaintiffs cannot plausibly allege that Menards intended to *induce* consumers to rely on the nominal size as a representation regarding the actual size of the lumber, which is required to state a valid ICFA claim. *Mackinac v. Arcadia Nat'l Life Ins. Co.*, 217 Ill.App.3d 138, 141-43 (1st Dist. 1995). As discussed, the tags and labels do not make *any* representations regarding the actual thickness and width of the lumber. *See Supra* Section II.B.

alleged that the defendant violated ICFA by deceptively labeling its clothing products with "suggested prices" while consistently selling the products for "sale prices." *Id.* at 363. The court acknowledged that the use of "suggested prices" was a technical violation of certain Illinois regulations and may have deceived the plaintiff. *Id.* at 365-66. Nonetheless, the court held that the ICFA claim failed due to a lack of actual damages because the plaintiff did not allege that: (1) he was deprived of the "benefit of his bargain" by paying more than the actual value of the property; or (2) he could have obtained a better price for the products in the marketplace. *Id.* at 365; *see also Camasta*, 761 F.3d at 739 (dismissing ICFA claim for same reasons).[12]

Like the plaintiff in *Kim*, Plaintiffs here have failed to allege any actual damages. Plaintiffs received the "benefit of their bargain" because the products at issue meet NIST standards for 4x4 dimension lumber and 1x6 cedar siding. Plaintiffs did not and cannot demonstrate that they paid more than the actual value of the 4x4 and 1x6 products at issue. Moreover, Plaintiffs fail to allege that any other retailer sells dimension lumber with an actual size of 4" by 4" or 1" by 6" – products that do not exist – or that the products would have cost less than the products purchased by Plaintiffs. Plaintiffs' ICFA claim must be dismissed.

### D. **Plaintiffs Cannot Allege a Material Misrepresentation**

To state a claim under ICFA, a plaintiff must allege that the misrepresentation or omission was *material*. 815 ILCS 505/2. A material fact is one that would alter a plaintiff's course of conduct or that concerns "the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *White v. Daimler Chrysler Corp.*,

---

[12] Plaintiffs' breach of warranty claims also fail due to their inability to allege actual damages for the reasons discussed in this Section of the Memorandum and Section I. *See, e.g., Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill.App. 504, 511 (1st Dist. 2005) (damages are a required element of a breach of express warranty claim); *Caterpillar, Inc. v. Usinor Industeel*, 393 F.Supp.2d 659, 678 (N.D. Ill. 2005) (breach of implied warranty claim requires plaintiff to show he or she was harmed because the goods were not suitable for a particular purpose).

368 Ill.App.3d 278, 286 (1st Dist. 2006). A plaintiff must allege with sufficient particularity the facts that make the allegedly deceptive act material. *Id.* at 287. Plaintiffs do not meet this standard here because no reasonable consumer would rely on the use of common *names* of standard lumber products as a representation about the actual size of the lumber. Indeed, as noted above, it is "common knowledge" that a 4x4 does not measure 4" by 4". *See Lohrenz v. Country Mut. Ins. Co.*, 198 Ill.App.3d 810, 813 (3rd Dist. 1989) (rejecting an ICFA claim because alleged misrepresentation was matter of "common knowledge"). Furthermore, Plaintiffs fail to allege with sufficient particularity that they would have acted differently absent the allegedly deceptive conduct.

**E. Plaintiffs' Breach of Warranty Claims Fail**

**1. Plaintiffs Did Not Provide the Requisite Notice**

Plaintiffs' breach of express and implied warranty claims fail as a matter of law because they did not provide Menards with the requisite notice. Illinois law requires a buyer filing a breach of warranty claim to plead that the buyer provided notice of the alleged breach to the seller within a reasonable time after the breach is discovered or should have been discovered. 810 ILCS 5/2-607; *Kind*, 83 F.Supp.3d at 759-61 (express warranty); *Connick*, 174 Ill.2d at 492-95 (express and implied warranty claims). Here, Plaintiffs have not alleged that they provided notice regarding the breach of warranty claims prior to filing suit against Menards and the allegations presented do not fall within any of the recognized exceptions to the requirement. Consequently, Plaintiffs' breach of warranty claims fail.

**2. Plaintiffs Cannot Allege the Existence of an Express Warranty**

A plaintiff must allege a breach of an "affirmation of fact or promise" that was a "part of the basis of the bargain" to establish a valid express warranty claim. 810 ILCS 5/2-313(1)(a), (b). However, the use of a trade name to describe a product cannot create an express warranty.

12

*See Szajna v. Gen. Motors Corp.*, 115 Ill.2d 294, 316-320 (Ill. 1986) (a trade name in a GM sales contract did not create an express warranty). Here, the tags and labels included the commonly known trade description of the lumber and did not contain any "affirmation of fact or promise" regarding the actual thickness and width of the lumber. Thus, Menards did not warrant the actual size of the lumber as 4" by 4" or 1" by 6" and that was never a part of the basis of the bargain with Plaintiffs. Plaintiffs' express warranty claim must fail.

### 3.  <u>Plaintiffs' Implied Warranty Claim Fails as a Matter of Law</u>

Illinois law provides that no implied warranty exists if a buyer has examined goods as fully as desired or has refused to examine goods before entering into a contract. 810 ILCS 5/2-316(b). The implied warranty is extinguished under such circumstances because when a buyer unreasonably fails to examine goods the resulting injuries may be found to result from buyer's own actions. *Id.* at cmt. 8. Plaintiffs allege that they visited Menards retail locations, thus they had the opportunity to inspect the lumber to determine actual sizes before their purchases. *See* Compl. ¶¶20-35. Thus, Plaintiffs' implied warranty of merchantability claim fails. *See Kirk v. Stineway Drug Store Co.*, 38 Ill.App.2d 415, 424 (1st Dist. 1963) (no warranty of merchantability claim because plaintiff had opportunity to inspect goods before purchase).

Plaintiffs also fail to allege that the lumber was not merchantable. Goods comply with the implied warranty of merchantability if they are "of a quality comparable to that generally acceptable in that line of trade" and if they "pass without objection in the trade." 810 ILCS 5/2-314(2)(a), cmt. 2; *see Comark Merch., Inc. v. Highland Grp., Inc.*, 932 F.2d 1196, 1203 (7th Cir. 1991) (rejecting merchantability claim because single consumer complaint is not "objection in the *trade*"). Plaintiffs' allegations here confirm the size of the lumber products they purchased comply with NIST standards. *See supra* Facts Section. Similarly, Plaintiffs failed to allege the ordinary purpose of the lumber they purchased or how it was supposedly unfit for this purpose.

13

*See* 810 ILCS 5/-314(2)(c); *Indus. Hard Chrome, Ltd v. Hetran, Inc.*, 64 F.Supp.2d 741, 748

(N.D. Ill. 1999) (implied warranty claim dismissed for failure to allege ordinary purpose).

### 4. Plaintiffs' Claims for Breach of Warranty Are Facially Deficient Due to the Lack of a Deceptive or Misleading Statement

For the same reasons discussed in Section II.B., Plaintiffs' claims for breach of express

and implied warranty must be dismissed due to the failure to allege any deceptive conduct or a

misleading statement in connection with the actual size of the lumber. *Galanis*, 2016 WL

60337962, at *4 (dismissing claims for breach of express and implied warranty due to lack of

misleading statement); *Mydlach v. DiamlerChrysler Corp.*, 226 Ill.2d 307, 319 (Ill. 2007) (same

for express warranty); *S. Side Trust & Sav. Bank of Peoria v. Mitsubishi Heavy Indus., Ltd.*, 401

Ill.App.3d 424, 436-37 (1st Dist. 2010) (same for implied warranty). Indeed, as discussed above,

the tags and labels do not make any affirmation of fact or promise about actual size.

### F. Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law

The Seventh Circuit has held that where, as here, "the plaintiff's claim of unjust

enrichment is predicated on the same allegations of fraudulent conduct that support an

independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the

unjust enrichment claim as well." *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 492 F.3d 841, 855

(7th Cir. 2007). Because Plaintiffs' ICFA claim fails due to a lack of deception, their unjust

enrichment claim must meet the same fate. *Spector*, 178 F.Supp.3d at 674 (dismissing unjust

enrichment claim because product labels were not deceptive); *Kind*, 83 F.Supp.3d at 761 (same).

## III. This Court Lack Personal Jurisdiction over Menards for Nonresident Claims

Menards is not subject to personal jurisdiction in this Court for any claims alleged by

unnamed putative class members who reside in states other than Illinois and who assert claims

under the laws of those states. This Court does not have specific personal jurisdiction over

Menards for any claims based on conduct that occurred in states other than Illinois with no alleged connection to this State. *See, e.g.*, *Demedicis v. CVS Health Corp.*, No. 16-cv-5973, 2017 WL 569157, at *5 (N.D. Ill. Feb. 13, 2017) (dismissing claims arising under consumer fraud statutes of states other than Illinois due to lack of personal jurisdiction because named plaintiff was sole connection between defendants and Illinois). Further, Menards is not subject to general personal jurisdiction in Illinois because it is only "at home" in Wisconsin. *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014). Nonresident class members are also barred from asserting claims under ICFA unless they purchased lumber at a Menards store in Illinois. *See Irwin v. Jimmy John's Franchise, Inc.*, 175 F.Supp.3d 1064, 1069-70 (C.D. Ill. 2016) (dismissing ICFA claim because nonresident plaintiffs can only assert claims under ICFA if circumstances giving rise to cause of action occurred "primarily and substantially" in Illinois). Accordingly, this Court does not have personal jurisdiction over Menards for any claims Plaintiffs – who reside in Illinois, made purchases in Illinois, and only have claims under Illinois law – seek to assert on behalf of nonresident putative class members.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Menard, Inc. respectfully requests that this Court dismiss Plaintiffs' First Amended Complaint with prejudice and without leave to amend.

Dated: May 3, 2017

Matthew J. Fedor (NJ Bar No. 029742002)
DRINKER BIDDLE & REATH LLP
600 Campus Dr.
Florham Park, New Jersey 07932
Tel:    (973) 549-7000
Fax:    (973) 360-9831
Email: matthew.fedor@dbr.com

*Pro Hac Vice Application Pending*
*Counsel for Defendant Menard, Inc.*

Respectfully submitted,
By: /s/Matthew M. Morrissey
Daniel J. Delaney (ARDC No. 6201067)
Matthew M. Morrissey (ARDC No. 6302575)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000
Email: daniel.delaney@dbr.com
Email: matthew.morrissey@dbr.com

*Counsel for Defendant Menard, Inc.*

15

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on May 3, 2017, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

By: <u>/s/ Matthew M. Morrissey</u>___