**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL FUCHS, et al., | |
| Plaintiffs, | No. 17-cv-1752 |
| v. | Honorable Edmond E. Chang |
| MENARD, INC., | Magistrate David M. Weisman |
| Defendant. | |

**DEFENDANT MENARD, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), (2), AND (6)**

Daniel J. Delaney (ARDC No. 6201067)
Matthew M. Morrissey (ARDC No. 6302575)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000
Email: daniel.delaney@dbr.com
Email: matthew.morrissey@dbr.com

*Counsel for Defendant Menard, Inc.*

Matthew J. Fedor (NJ Bar No. 029742002)
DRINKER BIDDLE & REATH LLP
600 Campus Dr.
Florham Park, New Jersey 07932
Tel:    (973) 549-7000
Fax:    (973) 360-9831
Email: matthew.fedor@dbr.com

*Counsel for Defendant Menard, Inc.*
*Admitted Pro Hac Vice*

89484371.1

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I. PLAINTIFFS LACK STANDING BECAUSE THEY HAVE NOT ALLEGED A CONCRETE INJURY TRACEABLE TO THE CONDUCT OF MENARDS ................. 2

II. PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................................................................................................ 5

    A. Plaintiffs Misstate the Applicable Legal Standards ............................... 5

    B. Plaintiffs Do Not Plausibly Allege Deceptive Conduct ......................... 6

    C. Plaintiffs Do Not Plausibly Allege Actual Damages ........................... 10

    D. Plaintiffs Cannot Assert a Valid Breach of Warranty Claim ............... 12

        1. Plaintiffs' Obligation to Provide Pre-Suit Notice Was Not Excused ...... 12

        2. The 4x4 Trade Name Did Not Create an Express Warranty Regarding Size ..................................................................................... 12

        3. Plaintiffs' Implied Warranty Claims are Facially Deficient .................... 13

    E. Plaintiffs' Unjust Enrichment Claims Must be Dismissed ................... 14

III. THE COURT LACKS PERSONAL JURISDICTION OVER MENARDS FOR NON-RESIDENT CLAIMS ........................................................................................ 14

CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ..................................................................................................................4

*Association Benefit Services, Inc. v. Caremark Rx, Inc.*,
　493 F.3d 841 (7th Cir. 2007) ..................................................................................................14

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ..................................................................................................................7

*Biffar v. Pinnacle Foods Group, LLC*,
　No. 16-0873-DRH, 2016 WL 7429130 (S.D. Ill. Dec. 22, 2016) ......................................12, 14

*Bober v. Glaxo Wellcome PLLC*,
　246 F.3d 934 (7th Cir. 2001) ....................................................................................................6

*Bristol-Meyers Squibb Co. v. Superior Court of California*,
　___ U.S. ___, 2017 WL 2621322 (June 19, 2017) ..................................................................15

*Burton v. Hodgson Mill, Inc.*,
　No. 16-cv-1081, 2017 WL 1282882 (S.D. Ill. Apr. 6, 2017) ....................................................9

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
　761 F.3d 732 (7th Cir. 2014) ..................................................................................................11

*Galanis v. Starbucks Corp.*,
　No. 16-C-4705, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016) ......................................6, 7, 12

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
　564 U.S. 915 (2011) ................................................................................................................15

*Gubala v. CVS Pharmacy, Inc.*,
　No. 14-cv-9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ..........................................9, 10

*Ibarrola v. Kind, LLC*,
　83 F.Supp.3d 751 (N.D. Ill. 2015) ..............................................................................6, 7, 8, 9

*In re Aqua Dots Products Liability Litigation*,
　654 F.3d 748 (7th Cir. 2011) ................................................................................................3, 4

*Kirk v. Stineway Drug Store Co.*,
　38 Ill.App.2d 415 (1st Dist. 1963) ..........................................................................................14

*Liston v. King.com*,
　No. 15-cv-01853, 2017 WL 2243099 (N.D. Ill. May 23, 2017) .................................................4

*McDonnell v. Nature's Way Products, LLC*,
　No. 16-C-5011, 2017 WL 1149336 (N.D. Ill. Mar. 28, 2017) ................................................12

*Menominee Indian Tribe of Wisconsin v. Thompson*,
　161 F.3d 449 (7th Cir. 1998) ....................................................................................................4

*Morrow v. Ann, Inc.*,
　No. 16-CV-3340, 2017 WL 363001 (S.D. N.Y. Jan. 24, 2017) ................................................3

*Muir v. NBTY, Inc.*,
　No. 15-C-9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016) .......................................5, 9, 10

*Muir v. Playtex Products, LLC*,
　983 F.Supp.2d 980 (N.D. Ill. 2013) ..........................................................................................3

*Phillips v. DePaul Univ.*,
　2014 IL App (1st), 122817 ....................................................................................................6, 7

*Reid v. Unilever U.S., Inc.*,
　964 F.Supp.2d 893 (N.D. Ill. 2013) ........................................................................................13

*Remijas v. Neiman Marcus Group, LLC*,
　794 F.3d 688 (7th Cir. 2015) ....................................................................................................5

*Spector v. Mondelez International, Inc.*,
　178 F.Supp.3d 657 (N.D. Ill. 2016) ...................................................................................8, 10

*Szajna v. General Motors Corp.*,
　115 Ill.2d 294 (Ill. 1986) .........................................................................................................12

**STATUTES, RULES & REGULATIONS**

225 ILCS 470/8 ..............................................................................................................................4, 9

810 ILCS 5/2-313 ............................................................................................................................13

Federal Rule of Civil Procedure 9(b) ................................................................................................7

**OTHER AUTHORITIES**

NIST*, Voluntary Product Standard PS 20-15: American Softwood Lumber
　Standard* (April 2015) .........................................................................................8, 10, 12, 13

**INTRODUCTION**

Plaintiffs' opposition confirms that their ICFA, breach of express and implied warranty, and unjust enrichment claims should be dismissed for lack of Article III standing and for failure to state a claim upon which relief can be granted. Indeed, Plaintiffs made key admissions and failed to dispute or otherwise rebut Menards' primary arguments in support of dismissal. Specifically, Plaintiffs do not dispute that:

- The State of Illinois has adopted NIST standards regarding lumber sizes.

- In order to be considered a 4x4 under NIST standards (and Illinois law), dimension lumber must be surfaced to 3½" wide by 3½" thick.

- 3½" wide by 3½" thick are the *exact* dimensions of the 4x4 lumber they purchased.

- Dimension lumber denominated as "4x4" with actual dimensions of 4" wide by 4" thick *does not exist*.

In other words, Plaintiffs concede they received exactly what they were supposed to receive—standardized lumber that complies with applicable government standards.

Plaintiffs also admit that the shelf tags and labels at issue did not expressly say the lumber measured 4" wide by 4" thick (or even 4"x4"), did not contain the word "inch," "inches," or the inch mark ("), and did not contain any other words representing the width or thickness of the lumber (such as, for example, the words "width" or "thickness"). As a result, Plaintiffs effectively concede that the shelf tags and labels do not contain any representation whatsoever regarding the actual width or thickness of the lumber they purchased, much less a representation that is false, misleading, or otherwise deceptive.

All of the foregoing is fatal to Plaintiffs' claims. Ultimately, Plaintiffs say that they went to Menards for the specific purpose of buying 4x4 dimension lumber for home improvement projects. Inasmuch as Plaintiffs allege they *intended* to make these purchases *before* they looked

at any of the product labels or shelf tags at issue, and they admittedly received a standard 4x4 that complies with NIST standards and Illinois law, Plaintiffs clearly did not suffer any actual injury—economic or otherwise—traceable to the conduct of Menards. Indeed, Plaintiffs received exactly what they wanted and what they were supposed to receive, and thus got the benefit of their bargain.

For the reasons set forth in its moving brief, and for the additional reasons set forth below, the Court should grant Menards' motion to dismiss for lack of standing and for failure to state a claim upon which relief can be granted.

## ARGUMENT

### I. Plaintiffs Lack Standing Because They Have Not Alleged a Concrete Injury Traceable to the Conduct of Menards

To be sure, actual economic harm is enough to establish Article III standing if it is traceable to the defendant's conduct. But Plaintiffs have not sufficiently alleged economic injury here. In fact, Plaintiffs' own allegations confirm they did not suffer *any* concrete injury—economic or otherwise—much less one that is traceable to any conduct on the part of Menards.

Plaintiffs offer two alternative theories of purported economic harm, both of which lack merit. Plaintiffs' first theory is that they suffered an out-of-pocket loss because they suggest they would not have bought the 4x4s "but for" the purportedly false representations. But Plaintiffs' own allegations defeat this argument, on both concrete injury and traceability grounds. Indeed, Plaintiffs allege that the reason they went to Menards in the first place—*before* they saw any purportedly false labels and shelf tags—was for the specific purpose of purchasing the 4x4 dimension lumber they needed for home improvement projects.[1] Compl. ¶¶21, 31. Plaintiffs

---

[1] Plaintiffs do not allege that they needed lumber that had actual dimensions of 4" wide by 4" thick for their projects, nor do they plead any facts that plausibly suggest that to be the case. Given that 4"x4" is

could not have been induced to purchase 4x4s by the labels and shelf tags because—according to them—they intended to purchase 4x4s before they even set foot in Menards' stores.

Because Plaintiffs admittedly intended (and apparently needed) to buy 4x4s before seeing any purported misrepresentation regarding the lumber, this case is fundamentally different from the standing cases Plaintiffs rely on, such as *In re Aqua Dots Products Liability Litigation, Muir v. Playtex Products, LLC,* and *Morrow v. Ann, Inc*. The *Aqua Dots* and *Playtex* cases are further distinguishable because Plaintiffs do not allege that the 4x4s they bought were defective or dangerous, they do not identify any alleged misrepresentations about the quality of the 4x4s, and they do not suggest the 4x4s they bought were inferior compared to competing products. Indeed, the alleged injuries in *Aqua Dots* were sufficiently concrete because the product at issue was dangerous and defective. 654 F.3d 748, 749-50 (7th Cir. 2011). In *Playtex*, the alleged injuries were sufficiently concrete because the plaintiffs bought a product that was falsely represented to be "proven" superior to competing products even though tests concluded otherwise. 983 F.Supp.2d 980, 983 (N.D. Ill. 2013). Here, by contrast, Plaintiffs concede the lumber they purchased complies with the applicable NIST standards and Illinois law, meaning it was not defective or inferior.[2] *See* Pls.' Br. at 17 ("Plaintiffs do not base their claim in any way on Defendant's failure to comply with industry standards"). Thus, Plaintiffs have neither suffered nor alleged an injury that is even remotely similar to the plaintiffs in *Aqua Dots* and *Playtex*.

Plaintiffs' second theory—that they supposedly would have "paid less" for the lumber

---

the nominal size of a standard 4x4 that measures 3½" wide by 3½" thick, the only reasonable inference from the allegations of the Amended Complaint is that Plaintiffs needed standard 4x4s.

[2] Plaintiffs argue, incorrectly, that NIST standards are "extrinsic evidence." *See* Pls.' Br. at 4, 19. NIST standards regarding lumber size have been adopted as law in the State of Illinois and thus can be considered by the Court on a motion to dismiss, just as the Court can consider any other law. 225 ILCS 470/8. And regardless, Plaintiffs do not dispute that the Court may take judicial notice of NIST standards in any event. *See Menominee Indian Tribe of Wisc. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

but for the purportedly false representations (presumably because the actual size is smaller than 4" wide by 4" thick)—fares no better. To begin with, the naked assertion that Plaintiffs were overcharged is conclusory and not supported by any allegations of *fact*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("naked assertions devoid of further factual enhancement" do not suffice). Indeed, Plaintiffs do not allege any *facts* suggesting they paid a "premium" for the 4x4s they bought at Menards as opposed to 4x4s available elsewhere. And, critically, Plaintiffs do not contest that under NIST standards (and Illinois law), in order to qualify as a 4x4, dimension lumber must be surfaced to 3½" wide by 3½" thick, which is the exact size of the lumber Plaintiffs received. *See Lumber Standard*, T.3. So, the undisputed reality is Plaintiffs could not have purchased dimension lumber denominated as "4x4" with an actual size of 4" wide by 4" thick at some other store for a lower price because it is a hypothetical product that does not exist.[3] *Id.*

The Seventh Circuit recently addressed a similar scenario in *Eike v. Allergan, Inc.* when it noted, "[t]he fact that a seller does not sell the product you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment…" 850 F.3d 315, 318 (7th Cir. 2017). *Eike* is directly on point and it should control the outcome of this dispute.[4]

Plaintiffs' reliance on *Aqua Dots* and *Playtex* for their "overcharge" theory similarly falls flat. Indeed, the Seventh Circuit recently observed it is "dubious" that an alleged overcharge could suffice to establish Article III standing in cases that do not involve defective or dangerous

---

[3] To be sure, Plaintiffs are correct that "it is not impossible to have lumber cut" to an exact size of 4" wide by 4" thick. Pls.' Br. at 12. But such lumber would not constitute 4x4 dimension lumber under NIST standards. And Plaintiffs allege no facts to support an inference they would have paid less money for lumber with an exact size of 4" wide by 4" thick than they paid for the lumber they bought at Menards.

[4] Plaintiffs' attempt to analogize the facts here to *Liston v. King.com*, No. 15-cv-01853, 2017 WL 2243099 (N.D. Ill. May 23, 2017), falls flat. The alleged injury in *Liston* was the deprivation of video game "lives" that the defendant sold to customers for 20 cents each. Unlike here, the product both (a) existed, and (b) had a determinable value because the defendant actually sold it.

products. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015) (noting that "[i]n some situations, we have held that financial injury in the form of an overcharge can support Article III standing" but "[i]mportantly, many of those cases involve products liability claims against defective or dangerous products"); *see also Muir v. NBTY, Inc.*, No. 15-C-9835, 2016 WL 5234596 at *3 (N.D. Ill. Sept. 22, 2016) (noting that the "Seventh Circuit has recognized that one who has allegedly paid more for a product in reliance on misrepresentations *about the product's quality* has standing to sue for recovery of the financial loss.") (emphasis added).

In evaluating whether Plaintiffs have suffered a concrete injury traceable to the conduct of Menards, the Court should not overlook the sheer irony of Plaintiffs' claims. Conspicuously missing from the Amended Complaint are any allegations suggesting that the lumber Plaintiffs purchased was unsuitable for their home improvement projects. Logic dictates that if Plaintiffs truly needed standard 4x4s for their projects, they would have been in a *worse* position if they had received *non-compliant* lumber that was bigger than the compliant lumber they received. Thus, regardless of what the shelf tags and labels purportedly said or did not say, the undeniable fact remains that Plaintiffs got exactly what they wanted, and what they in fact were supposed to receive: standard lumber that complies with NIST standards and Illinois law.

## II. Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

### A. Plaintiffs Misstate the Applicable Legal Standards

As a preliminary matter, in multiple sections of their opposition, Plaintiffs misstate the applicable legal standards. For example, Plaintiffs suggest that on a motion to dismiss a court cannot determine if a reasonable consumer would be misled by the defendant's statements because the analysis involves questions of fact. Pls.' Br. at 11. Plaintiffs further argue that a

court cannot decide whether a defendant's statements constitute an "affirmation of fact or promise." *Id.* at 15, 18. These arguments ignore well established case law holding that "[a]lthough ICFA claims often involve disputed questions of fact not suitable to a motion to dismiss, a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F.Supp.3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLLC*, 246 F.3d 934, 940 (7th Cir. 2001)); *Galanis v. Starbucks Corp.*, No. 16 C 4705, 2016 WL 6037962, at *2 (N.D. Ill. Oct. 14, 2016). Furthermore, it is well settled that a court analyzing whether a statement is deceptive "must consider whether the act was deceptive as reasonably understood in light of all the information available to the plaintiffs." *Phillips v. DePaul Univ.*, 2014 IL App (1st), 122817, ¶44; *Galanis*, 2016 WL 6037962, at *5-6.

### B. Plaintiffs Do Not Plausibly Allege Deceptive Conduct

Plaintiffs say they have pled a "cut and dry claim for deceptive conduct for purchasing a product that was not the same as represented by Defendant on its advertising and product labeling." Pls.' Br. at 12. But Plaintiffs concede, as they must, that the shelf tags and labels at issue did *not* expressly say the lumber actually measured 4" wide by 4" thick (or even 4"x4"), did not contain the word "inch," "inches," or the inch mark ("), and did not contain *any* other words representing the width or thickness of the lumber (such as the words "width" or "thickness").[5] *See* Pls.' Br. at 10.

Likely realizing this admission is devastating to their claims, Plaintiffs argue that the labels are deceptive—not because of what the labels say—but because of what *other* unidentified labels for *other* unidentified lumber products say. Plaintiffs' argument lacks merit as they have

---

[5] Plaintiffs' suggestion that Menards somehow conceded that the dimensions of the lumber Plaintiffs purchased was different from what was represented on the label is plainly false. *See* Pls.' Br. at 8. Menards' opening brief makes clear that it is Menards position that the labels and shelf tags did not contain any representation regarding the lumber's actual thickness or width.

failed to plausibly allege that the use of the name 4x4 was deceptive or misleading.

Initially, the Court should give no weight to the unidentified labels for other unidentified products that Plaintiffs attempt to rely on. Plaintiffs' ICFA claims are subject to the heightened pleading standard set forth in Rule 9(b). *Ibarrola*, 83 F.Supp.3d at 756. Yet Plaintiffs failed to plead any relevant facts concerning the other labels or the other products. Indeed, they did not provide any examples or any other details that would enable the Court (a) to evaluate whether the other lumber products are comparable to the products Plaintiffs purchased, (b) to fairly compare the other labels to the shelf tags and labels for the lumber Plaintiffs bought, or (c) to consider whether the labels of the lumber Plaintiffs purchased plausibly could be found to be deceptive in light of the other labels. Courts must consider "all of the information available to plaintiffs" when evaluating whether a statement is deceptive. *Phillips*, 2014 IL App (1st), 122817, ¶44; *Galanis*, 2016 WL 6037962, at *5-6. Plaintiffs' failure to provide any details regarding these other labels precludes the Court from conducting that analysis. Notably, however, Plaintiffs do not dispute that the lumber they bought was readily available for in-store inspection, measuring, and comparison to other lumber products, which significantly undercuts their ICFA claims.[6]

Regardless, the fact that different product labels for different lumber products made by different lumber manufacturers may have provided information that is different from the labels of the products Plaintiffs' purchased is not enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs cite no authority—and Menards is aware of none—that requires sellers to employ a uniform method of product labeling. *Cf. Spector v. Mondelez Int'l, Inc.*, 178 F.Supp.3d 657, 666-67

---

[6] To the extent one of the other unidentified products Plaintiffs are referencing was a standard 4x4 stocked near the 4x4s Plaintiffs' purchased, and the label indicated it had a nominal size of 4" wide by 4" thick and an actual size of 3½" wide by 3½" thick, it would substantially undermine Plaintiffs' ICFA claim for numerous reasons.

(N.D. Ill. 2016) (rejecting ICFA claim based on allegedly deceptive product labeling where defendant's website provided additional product disclosures that plaintiff never read). Moreover, Plaintiffs do not even allege that they *saw* these other product labels, much less that they were deceived by them in connection with their decision to purchase lumber from Menards. *See id.*; *see also Playtex*, 983 F.Supp.2d at 991 ("Under the ICFA, deceptive advertising cannot be the proximate cause of damages...unless it actually deceives the plaintiff.") (internal quotation marks and citation omitted).

Plaintiffs next summarily declare that "average consumers" would reasonably understand the name 4x4 as a representation that the lumber actually measures exactly 4" wide by 4" thick. The glaring flaw with this argument is Plaintiffs' admission that the tags and labels do not contain words indicating or even suggesting the measurement of a dimension (such as "width" or "thickness"), or the unit of measurement used, such as "inch," "inches," or even the inch mark ("). *See* Pls.' Br. at 10. There is no plausible basis to infer that consumers would interpret the commonly-known product name 4x4 as describing the lumber's actual measured width and thickness—in inches—when it is undisputed that no such words appear anywhere on the label. And this is particularly true given that NIST standards make clear that even when the nominal size of 4" x 4" is used to describe dimension lumber "**[n]o inference shall be drawn that the 'nominal' sizes are dressed [or actual] sizes**." *Lumber Standard*, § 3.4.4 (emphasis added).

Plaintiffs' attempt to distinguish *Ibarrola* falls flat as the case is directly on point. Here, as in *Ibarrola*, Plaintiffs ask this Court to find it is plausible that they reasonably believed they were buying a dimension lumber product that does not exist.[7] The *Ibarrola* court rejected a virtually indistinguishable argument. In *Ibarrola*, the plaintiff claimed it was reasonable for consumers to be misled by the statement "no refined sugars" but the court disagreed because

---

[7] *See supra* footnote 3.

"naturally occurring, unrefined sugars derived from sugar cane do not exist." 83 F.Supp.3d at 759. In so doing, the court imputed a certain level of knowledge to reasonable consumers, including that they "would know that all sugar cane-derived sweeteners suitable for human consumption must be at least partially refined." *Id.* at 757. Moreover, in dismissing the plaintiff's ICFA claims, the court recognized that a plaintiff's bare conclusory allegations of what would mislead reasonable consumers and what such consumers understand is insufficient to defeat a motion to dismiss. *Id.* at 759.

This Court should follow *Ibarrola* and likewise dismiss Plaintiffs' claims here since dimension lumber denominated as "4x4" with actual dimensions of 4" wide by 4" thick *does not exist*. That the Illinois legislature long ago adopted NIST standards regarding lumber size is conclusive proof that it is both well-known and commonly accepted that standard 4x4 dimension lumber does not have an actual size of 4" wide by 4" thick. 225 ILCS 470/8.

The various cases Plaintiffs' rely on do not support their arguments, and in fact support dismissal. For example, in *Burton v. Hodgson Mill, Inc.*, the plaintiffs alleged that the defendant's pancake mix label violated ICFA because it claimed the product was "all natural" even though it used synthetic ingredients. No. 16-cv-1081, 2017 WL 1282882, at *1 (S.D. Ill. Apr. 6, 2017). The court denied a motion to dismiss because federal law did not define "all natural" and defendant conceded there was no commonly accepted definition of the term. *Id.* at *2. Here, by contrast, NIST standards unambiguously state that in order to qualify as 4x4 dimension lumber, the wood must be surfaced to 3½" wide by 3½" thick. *Lumber Standard*, T.3.

Plaintiffs' reliance on *Muir v. NBTY*, and *Gubala v. CVS Pharmacy, Inc.*, likewise supports dismissal. Both cases involved dietary supplements containing less active ingredient than indicated on the ingredient label. But unlike the 4x4 labels here, which simply reference the

commonly known product name, the ingredient labels at issue in *Muir* and *Gubala* both contained an express reference to precise units of measurement for a specific ingredient. *See NBTY*, 2016 WL 5234596, at *1 ("0.3% Hypericin, 0.9 mg"); *Gubala*, No. 14-cv-9039, 2016 WL 1019794, at *17 (N.D. Ill. Mar. 15, 2016) ("26 grams of protein"). At the risk of beating a dead horse, Plaintiffs here concede that the 4x4 labels contain no words suggesting the measurement of the "width" or "thickness" of the lumber nor do they reference a unit of measurement such as "inch," "inches," or even the inch mark (").

Ultimately, the shelf tags and product labels are not false, misleading or otherwise likely to deceive a reasonable consumer because they do not contain *any* representations regarding the lumber's actual thickness or width. 4x4 is simply the common *name* of a standard and well-known lumber product, not a representation of actual size. This name derives from the nominal size of the lumber, not its dressed or actual size. *Lumber Standard*, § 2.16 (referring to nominal size as the "label designation … that does not reflect the dressed [or actual size]."). In order for a piece of dimension lumber to be labeled as a 4x4 under NIST standards and Illinois law, the lumber must be surfaced to 3½" wide by 3½" thick, which is the exact size of the lumber Plaintiffs received. Plaintiffs have failed to plausibly allege a deceptive or misleading practice, and they were not defrauded. Accordingly, the Court should dismiss Plaintiffs' ICFA claims. *See Spector*, 178 F.Supp.3d at 665 (dismissing ICFA claim because plaintiff could not establish that the product label contained a deceptive or false representation).

### C. **Plaintiffs' Do Not Plausibly Allege Actual Damages**

Under binding Seventh Circuit law, Plaintiff's ICFA claims must be dismissed due to their failure to plausibly allege actual pecuniary loss as a result of Menards' alleged violation of ICFA. In *Kim v. Carter's Inc.*, the Seventh Circuit held that an ICFA claim failed due to a lack

of actual damages because the plaintiff did not allege that: (1) he was deprived of the "benefit of his bargain" by paying more than the actual value of the property; or (2) he could have obtained a better price for the products in the marketplace. 598 F.3d 362, 365-66 (7th Cir. 2010); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (dismissing ICFA claim for same reasons).

Plaintiffs' attempt to distinguish *Kim* is unavailing. In fact, the language Plaintiffs cite from *Kim* supports dismissal. In that regard, even assuming for sake of argument that the labels were deceptive (they were not for the reasons already discussed), Plaintiffs do not claim that the lumber they purchased was defective. And they have failed to plausibly allege any facts suggesting it was worth less than what they paid. On the contrary, Plaintiffs concede the lumber they purchased complies with applicable NIST standards and Illinois law, meaning it was neither defective nor somehow less valuable than other 4x4 dimension lumber. As noted above, Plaintiffs say the reason they went to Menards in the first place was for the specific purpose of purchasing 4x4 dimension lumber they needed for home improvement projects. Compl. ¶¶21, 31. As in *Kim*, Plaintiffs here have not suffered damage because they "agreed to pay a certain price" for the lumber "which they do not allege was defective or worth less than they actually paid." *Kim*, 598 F.3d at 365. Plaintiffs received the benefit of their bargain because they got exactly what they wanted and what they were supposed to receive: standard 4x4 dimension lumber that complies with applicable standards and Illinois law.

Plaintiffs' remaining arguments in support of their attempt to establish pecuniary harm mirror their arguments in support of their attempt to establish Article III standing (*i.e.*, that they supposedly would not have bought the products or would have paid less for them). These arguments fail for the same reasons explained above, and the additional cases Plaintiffs cite such

as *McDonnell v. Nature's Way Products, LLC* and *Biffar v. Pinnacle Foods Group, LLC*, are inapposite for similar reasons.

### D. Plaintiffs Cannot Assert a Valid Breach of Warranty Claim

#### 1. Plaintiffs' Obligation to Provide Pre-Suit Notice Was Not Excused

Relying on case law holding that pre-suit notice is not required if a "defendant had actual knowledge of the product's defect," Plaintiffs contend they are excused from providing pre-suit notice here because Menards knew that its dimension lumber products did not have the same dimensions as warranted. But Plaintiffs do not allege that the lumber they purchased was "defective." As noted, Plaintiffs concede that the lumber they purchased complies with NIST standards and Illinois law. Accordingly, Plaintiffs' express and implied warranty claims must fail for failure to provide the requisite notice.[8]

#### 2. The 4x4 Trade Name Did Not Create an Express Warranty Regarding Size

Plaintiffs do not dispute that the use of a trade name to describe a product cannot create an express warranty. *See Szajna v. Gen. Motors Corp.*, 115 Ill.2d 294, 316-320 (Ill. 1986). Plaintiffs' argument that Menards cannot seek dismissal based upon "its own unilateral interpretation" that the tags and labels used "commonly known trade descriptions" is unavailing. Pls.' Br. at 15. Menards is not relying on a "unilateral interpretation" that 4x4 is a commonly-known trade description; rather, it relies on the NIST standards regarding lumber sizes, which the Illinois legislature adopted. *See Lumber Standard* § 1.1.3 (noting that the NIST Standard "establishes the principal trade classifications and sizes of softwood lumber"). Inasmuch as NIST makes clear that "[n]o inference shall be drawn that the 'nominal' sizes are dressed [or

---

[8] Plaintiffs' express and implied warranty claims also must be dismissed due to the failure to allege any deceptive conduct or a misleading statement in connection with the actual thickness and width of the lumber. *Galanis*, 2016 WL 60337962, at *4 (dismissing claims for breach of express and implied warranty due to lack of misleading statement).

actual] sizes," the use of 4x4 (or even the nominal size of 4" x 4") was not an "affirmation of fact or promise" that was a "part of the basis of the bargain" and Plaintiffs' express warranty claim fails.[9] *Lumber Standard* § 3.4.4; 810 ILCS 5/2-313(1)(a), (b).

### 3. Plaintiffs' Implied Warranty Claims are Facially Deficient

Plaintiffs clarify that they are not asserting implied warranty of merchantability claims based on the lumber's failure to comply with industry or trade standards or the quality of the product. *See* Pls.' Br. at 17. Instead, their claims are based on (a) the lumber's alleged failure to conform to promises made on the label, and (b) the lumber allegedly not being fit for its ordinary purpose. These claims fail.

The implied warranty claims based on labeling are entirely duplicative of Plaintiffs' express warranty claims, and thus they fail for the same reasons (*i.e.*, the label did not make any representation about the actual thickness and width dimensions of the lumber). Plaintiffs have utterly failed to plausibly allege any facts suggesting that the lumber they purchased—which they admit complied with industry standards—was not fit for its ordinary purpose.

Plaintiffs' other arguments in support of their implied warranty claims ignore prevailing Illinois law. Plaintiffs first contend that their implied warranty claims should survive even though they had an "opportunity" to inspect the lumber they purchased to confirm the actual dimensions. Pls.' Br. at 16. Plaintiffs also suggest that their implied warranty claims should survive because Menards did not "demand" that they inspect the lumber products and because

---

[9] As noted above, Plaintiffs' argument that the court cannot determine at this stage whether a statement is an "affirmation of fact or promise" misstates the law. *Reid v. Unilever U.S., Inc.*, 964 F.Supp.2d 893 (N.D. Ill. 2013), which Plaintiffs rely on, proves the point. In *Reid*, the court concluded it could not decide on a motion to dismiss whether a claim that the defendant's hair product was "smoothing" was an affirmation of fact or mere puffery. *Id.* at 908-909. That reasoning is inapplicable here because Menards has not raised a puffery argument. But, critically, the *Reid* court dismissed part of the plaintiffs' ICFA claim because it determined that a statement on the product label regarding Keratin content was not deceptive as a matter of law. *Id.* at 914-15.

89484371.1        13

they did not "refuse to examine the goods." *Id.* These arguments are critically flawed because well-established Illinois case law holds that an opportunity to inspect goods before purchase nullifies an implied warranty of merchantability claim. *See Kirk v. Stineway Drug Store Co.*, 38 Ill.App.2d 415, 424 (1st Dist. 1963). Plaintiffs do not dispute that they had an opportunity to inspect—and measure—the lumber at issue. Pls.' Br. at 16. Thus, the implied warranty claims must be dismissed.

### E. Plaintiffs' Unjust Enrichment Claims Must be Dismissed

Plaintiffs do not contest that their unjust enrichment claims should be dismissed if the Court dismisses their ICFA claims. Pls.' Br. at 19. Such an argument would be misplaced because the Seventh Circuit has held that where, as here, "the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Ass'n Benefit Servs., Inc. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Plaintiffs' ICFA claims fail due to a lack of deception and their unjust enrichment claims must meet the same fate.

### III. The Court Lacks Personal Jurisdiction Over Menards for Non-Resident Claims

Menards acknowledges that in *Biffar*, the district court declined to address personal jurisdiction arguments concerning the claims of non-resident putative class members at the motion to dismiss stage. Nevertheless, a recent decision from the United States Supreme Court makes clear that this Court lacks specific personal jurisdiction over Menards for any claims of non-resident putative class members who bought lumber in other states, thus the Court need not delay ruling on that issue until a later stage of this litigation.

In *Bristol-Meyers Squibb Co. v. Superior Court of California*, ___ U.S. ___, 2017 WL

2621322 (June 19, 2017), the Supreme Court made clear that "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Id.* at \*7 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Where, as with the claims of non-resident putative class members here, "there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* Indeed, in *Bristol-Meyers*, the Court held that the lower court lacked personal jurisdiction over the claims of non-resident plaintiffs because "all the conduct giving rise to [their] claims occurred elsewhere." *Id.* at \*9.

## CONCLUSION

WHEREFORE, Menard, Inc. respectfully requests that this Court Dismiss Plaintiffs' First Amended Complaint with prejudice and without leave to amend.

Dated: June 26, 2017

Matthew J. Fedor (NJ Bar No. 029742002)
DRINKER BIDDLE & REATH LLP
600 Campus Dr.
Florham Park, New Jersey 07932
Tel:    (973) 549-7000
Fax:    (973) 360-9831
Email: matthew.fedor@dbr.com
*Admitted Pro Hac Vice*
*Counsel for Defendant Menard, Inc.*

Respectfully submitted,
By: /s/ Matthew M. Morrissey
Daniel J. Delaney (ARDC No. 6201067)
Matthew M. Morrissey (ARDC No. 6302575)
DRINKER BIDDLE & REATH LLP
191 North Wacker Drive, Suite 3700
Chicago, IL 60606-1698
Tel:    (312) 569-1000
Fax:    (312) 569-3000
Email: daniel.delaney@dbr.com
Email: matthew.morrissey@dbr.com
*Counsel for Defendant Menard, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 26, 2017, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

By: /s/ Matthew M. Morrissey

89484371.1