UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL FUCHS AND VLADISLAV KRASILNIKOV, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 17-cv-01752 |
| v. | ) ) | Judge Edmond E. Chang |
| MENARD, INC., | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this proposed class action, Plaintiffs Michael Fuchs and Vladislav Krasilnikov allege that hardware-store chain Menards inaccurately labels the size of its lumber products with dimensions that are really smaller than what the labels say. Fuchs and Krasilnikov claim that Menards's failure to include the actual size of the lumber on labels violates the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 502/1 *et seq.*, breaches express and implied warranties, and unjustly enriches Menards.[1] R. 4, Am. Compl. Menards moves to dismiss all of these claims under Federal Rules of Civil Procedure 12(b)(1) (no subject matter jurisdiction due to a lack of standing), 12(b)(2) (lack of personal jurisdiction as to non-Illinois claims), and 12(b)(6) (failure to state a claim). R. 13,

---

[1]This Court has subject matter jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because (1) at least one member of the putative class is a citizen of a different state than the Defendant, (2) the amount in controversy exceeds $5,000,000 when considering claims of proposed class members; and (3) none of the exceptions to CAFA jurisdiction apply.

Mot. Dismiss. The Court concludes that, as a matter of law, the labels on the lumber are not misleading, so Menards's motion to dismiss is granted against each claim.[2]

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the First Amended Complaint. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Defendant Menard, Inc. is a Delaware corporation with its principal place of business located in Eau Claire, Wisconsin, and operates a chain of home improvement stores in Illinois and across the country. Am. Compl. ¶ 8. Menards sells dimensional lumber products—that is, lumber pieces differentiated by their height, length, and width—in a variety of sizes in its stores. *Id.* ¶ 13. In November 2016, Michael Fuchs visited a Gurnee, Illinois Menards location, where he purchased several 1x6 cedar planks and 4x4 Douglas fir planks. *Id.* ¶¶ 24, 27. The tags labeling the lumber read "1 x 6 – 71 – 72" Cedar" and "4 x 4 – 10' Premium Doug Fir" respectively. *Id.* ¶¶ 22, 25. Fuchs measured his lumber when he returned home and discovered the 1x6 measured .66" x 5.25" x 6' and the 4x4 measured 3.5" x 3.5" x 10'. *Id.* ¶¶ 28, 29.

According to Fuchs, the 1x6 was 43% less material (in volume) and the 4x4 was 23% less material (again in volume) than advertised by Menards. Am. Compl. ¶ 28-29. Vladislav Krasilnikov had a similar experience with lumber that he bought

---

[2] Neither side requested that the Court wait for class-certification discovery or class-certification motion practice before a merits decision on the motion to dismiss. *See* Fed. R. Civ. Pro. 23(c)(1) ("At an early practicable time after a person sues or is sued by a class representative, the court must determine by order whether to certify the action as a class action.").

at a Menards store in Fox Lake, Illinois, in which the 4x4 pieces were labeled as "4 x 4 – 8' White Wood" but ultimately measured 3.5" x 3.5" x 8'. *Id.* ¶¶ 30, 35.

In March 2017, Fuchs and Krasilnikov filed an amended class action complaint on behalf of themselves and a class of individuals who had purchased Menards's dimensional lumber products, alleging that Menards affirmatively represented and advertised particular sizes for its lumber that did not reflect the actual dimensions sold. Menards has moved to dismiss all the claims, primarily arguing that Fuchs cannot establish that Menards made an affirmative misrepresentation or warranty, and thus was not enriched by any fraud. R. 14, Def.'s Br.

## II. Standards of Review

### A. Rule 12(b)(2) Motion to Dismiss

The plaintiff bears the burden of establishing that personal jurisdiction is proper when jurisdiction is challenged by the defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (noting that the plaintiff must generally only make a prima facie case of personal jurisdiction). When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2) and material facts necessary to decide the issue are in dispute, the Court must grant discovery and hold an evidentiary hearing to resolve the dispute. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Then, "the plaintiff must establish jurisdiction by a preponderance of the evidence," *Purdue Research Found.*, 338 F.3d at 783, and "prove what it alleged" at that hearing, *Hyatt Intern. Corp.*, 302 F.3d at

3

713. This is in contrast to what is "[n]ormally [done] on review of a motion to dismiss," where the Court "accepts all well-pleaded allegations in the complaint as true." *Purdue Research Found.*, 338 F.3d at 783. Here, no facts that are necessary to decide the issue were in dispute and neither side requested an evidentiary hearing. Indeed, as discussed toward the end of this Opinion, no one disputes that personal jurisdiction over Menards applies as to the Illinois-law claims brought against it.

### B. Rule 12(b)(6) Motion to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil

4

Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). And Rule 9(b)'s heightened pleading standard applies to fraud claims brought under the ICFA. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citation omitted). Thus, Rule 9(b) requires that Fuchs's complaint "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Put differently, his complaint must describe "the who, what, when, where, and how" of the fraud. *United States ex rel. Lusby v. Rolls-Royce Corp.,* 570 F.3d 849, 853 (7th Cir. 2009) (internal quotation marks and citation omitted). While Fuchs also pled unfair acts under ICFA, which under proper circumstances are evaluated under Rule 8(a), Rule 9(b) will apply because the claims are "premised upon a course of fraudulent conduct." *Pirelli,* 631 F.3d at 446-47 (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)).

### III. Discussion

### A. Standing

The first issue is whether Fuchs and Krasilnikov have alleged a particularized injury-in-fact, which is a requirement for Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A concrete injury must

5

"actually exist" and not be "abstract." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016). Intangible injuries can still qualify as an injury-in-fact and thus can confer standing. Though injury arising out of a statutory violation can give rise to a concrete injury, it is not true that a statutory violation *automatically* confers standing. *See id.* at 1549-50 (citing example of a consumer reporting agency misstating only a person's zip code as insufficient Article III injury, even though the misstatement might violate the Fair Credit Reporting Act).

Here, the Plaintiffs allege that they would not have bought the lumber had they not been misled by the labels; at the least, the Plaintiffs say, they would have paid less. Am. Compl. ¶¶ 36, 37, 53, 54, 60, 70. These alleged harms qualify as a financial injury for purposes of Article III standing. *In re Aqua Dots Prods. Liab. Litig.,* 654 F.3d 748, 751 (7th Cir. 2011) ("[T]hat members of the class did not suffer physical injury ... does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing."). Against this, Menards points out that Fuchs and Krasilnikov do not allege that the lumber itself was "defective or inferior in quality" or unsuitable for its intended use. That argument might have persuasive force when deciding the *merits* of the claims in this case. But for Article III injury purposes, there is no requirement that a product be functionally deficient in order for a financial injury to arise out of its purchase. Rather, Plaintiffs assert that they would not have spent the money on the lumber

6

(or would have insisted on paying less for it), and that sort of financial injury meets the Article III injury threshold for standing purposes.

### B. Count One: ICFA Claim

### 1. Deceptive Representation

In Count One, Fuchs and Krasilnikov allege that Menards violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILCS 505/1 *et seq.*, by misleading consumers in labeling dimensional lumber by common names rather than by actual size. Am. Compl. ¶ 50. To bring a claim under ICFA, Fuchs and Krasilnikov must allege with particularity: (1) a deceptive act or practice by Menards, (2) Menards's intent that Plaintiffs rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to them (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002). A plaintiff may recover under the Act for unfair or deceptive conduct. *Crichton v. Golden Rule Insurance Co.*, 832 N.E.2d 843, 853 (Ill. App. Ct. 2005). Although a practice can be unfair without being deceptive, *People ex rel. Hartigan v. Knecht Services, Inc.*, 575 N.E.2d 1378, 1385 (Ill. App. Ct. 1991), Fuchs's allegations are premised on fraud—that Menards knows that it is mislabeling the lumber's dimensions—and hinge on a finding of a deceptive practice by Menards, despite the complaint's passing references to an unfair practice. *Camasta v. Jos. A. Bank Clothier, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); Am. Compl. ¶¶ 41, 50.

To adequately state a claim for a violation of ICFA, the challenged representation must be deceptive. And although ICFA claims sometimes involve disputed questions of fact over what a reasonable consumer would find deceptive, a court may dismiss an ICFA claim at the pleading stage if the statement is "not misleading as a matter of law." *Ibarrola v. Kind,* 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). A statement is deceptive if it "creates a likelihood of deception or has the capacity to deceive," *Bober,* 246 F.3d at 940, in that it may mislead a "reasonable consumer," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015), as understood in light of "all the information available to plaintiffs." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014).

In moving to dismiss, Menards contends that it made no false or misleading representation about the actual size of the lumber on the labels. For three reasons—each reinforcing the others—Menards is right. First, the labels are *literally* true. Specifically, the store labels shown in Fuchs' and Krasilnikov's complaint do *not* have inch-mark symbols after the customary trade names of lumber pieces. Am. Compl. ¶ 25. Rather, only the total length of the piece of lumber has any kind of dimension symbol, which is set off from the name of the product, indicating a switch from a nominal descriptor to one of size, *e.g.,* a 4 x 4 – 10'. *Id.* To be sure, some individual tags do not follow this convention, but the departure from the convention actually omits any dimensional mark at all. For example, a label appears as 4 x 4 x 10 on the small individual tag (the tag with the UPC code) without any dimensional

8

mark. *Id.* ¶ 26. So the labels do not actually say that the lumber is 4 inches by 4 inches (or, for the cedar siding planks, 1 inch by 6 inches).

The second problem with the Plaintiffs' theory is that a federal agency—indeed, the one charged with assisting industries to develop manufacturing standards—actually recognizes the hardware industry's practice of labelling lumber products with a "nominal" size that is *not* the lumber's actual size, because lumber typically undergoes a "surfacing" process to smooth down the lumber from the rough initial cut. So the practice of not literally stating the actual size of lumber is endorsed by a government agency and industry practice.

The National Institute of Standards and Technology, which is part of the United States Department of Commerce, was created by federal statute. 15 U.S.C. § 272(a); 15 C.F.R. § 10.0(e). The Institute, which is also known by its acronym NIST, promotes the United States' manufacturing economy by developing measurement standards for industry practice. 15 U.S.C. § 271(a), (b). The Institute is actually a laboratory, and works with other federal and state agencies and with industry to establish voluntary measurement standards. *Id.* § 272(a), (b)(10). It establishes standardized sizes in order to (1) reduce costs for manufacturers and distributors; (2) promote better understanding between manufacturers and consumers; and (3) simplify the purchase, installation, and use of products by consumers. *See* 15 C.F.R. § 10.0(a)(1)-(3).

One of the industries addressed by Institute standards is the lumber industry. Specifically, NIST Handbook 130 is the guide for the Institute's lumber

product standards, as developed by the American Lumber Standard Committee. *See* R. 14, Exh. 1-A, Exh. 1-B. (The Committee's membership comprises producers, distributors, and consumers of lumber, all appointed by the Secretary of Commerce. R. 14, Exh. 1-A at 5.) The Institute's lumber standards explicitly distinguish the lumber's product name—that is, its "nominal size"—from the "actual sizes" of pieces, explaining that nominal sizes are "customary dimensions" based on the "dimensions of rough lumber before surfacing … thus, a dry '2 x 4' is surfaced to the actual dimensions of 1 ½ in x 3 ½ in." Exh. 1-B, *NIST Handbook* (2017 ed.), § 2.10 at 111. The two-by-four is just one example: several tables within the Lumber Standard set forth the minimum final (or "dressed") sizes for other pieces of dimensional lumber. *See* Exh. 1-A, *Lumber Standard*, T. 1-4. What these standards recognize is that a government-promoted industry practice has developed under which the nominal size of a lumber product is its named size and *not* its actual size.

It is true that the Institute's lumber guidelines state that, if the seller is going to use the nominal dimension to label the size of lumber, then that nominal size should be represented with the term "nominal" (or "nom") and the "actual or minimum dressed sizes" should be "prominently displayed to the customer by means of a table of label." *NIST Handbook* § 2.10.3 at 113. As far as the amended complaint alleges, Menards fell short on both conditions: Menards did not uniformly use the term "nominal" or "nom," nor did it always prominently display the actual or minimum dressed sizes. *See* Am. Compl. ¶ 17. But the important question is not whether the labels conform to each condition under the Institute's guidelines;

instead the question is whether the labels are deceptive under the Illinois Consumer Fraud Act. Without a literally untrue statement, combined with the government-recognized distinction between nominal sizes and actual sizes, no reasonable consumer would think that the labels showed the *exact* dimensions of the lumber.

That brings the analysis to the third reason—beyond literal accuracy and a government-endorsed industry practice—why no claim has been stated under the Illinois Consumer Fraud Act. ICFA's test for the deceptiveness of a representation is keyed to a reasonable consumer, *Mullins*, 795 F.3d at 673, and deceptiveness is evaluated specifically in light of "all the information available to the consumer," *Phillips*, 19 N.E.3d at 1031. Consumers in the Plaintiffs' position have direct access to all of the information they need as to dimensional size: the lumber's width and height are right there for the measuring. This is similar to *Galanis v. Starbucks Corp.*, 2016 WL 6037962 (N.D. Ill. Oct. 14, 2016), in which a coffee drinker sued Starbucks under ICFA because the actual volume of coffee or tea in iced drinks was less than the advertised "24 fluid ounces." *Id.* at \*1-2. Galanis could see the 24-ounce cup and had to understand that 24 actual ounces of fluid were not going to fit in there after ice was added. *Id.* at \*3. So no reasonable consumer should expect to receive a "side of ice" when ordering an iced drink. *Id.* at \*3. The available information made it plain that "24 fluid ounces" did not literally mean 24 ounces of fluid. *Id.* Similarly here, the Plaintiffs see labels that do not have dimensional-size markings, based on a published distinction recognized by the Institute, and the

11

Plaintiffs have direct and complete access to the information needed to determine the height and width of the lumber. It would be one thing if packaging prevented access to the height and width, or if the disputed characteristic of the product was not readily accessible, like the R value of insulation, NIST Handbook § 2.14 at 119, or the percentage of biodiesel in a fuel container, *id.* § 2.31 at 127. It is another thing where the Plaintiffs can readily see if there is a mismatch between what they perceive as the size on the label and the height and width of the lumber. In light of the literal accuracy of the label, the government-sponsored distinction in sizing, and the availability of the height-and-width information, Menards's labels were not deceptive under ICFA.[3]

## 2. Actual Damages under ICFA

Because no deceptive or misleading statement was made, the Court need not decide whether Fuchs and Krasilnikov have adequately alleged that they suffered actual damages under ICFA. For the sake of completeness, it does appear that the Plaintiffs adequately alleged this ICFA element, although no doubt that allegation would have been tested by the defense during discovery. Specifically, a plaintiff

---

[3] It is worth noting that Menards's drumbeat of an argument that 4" x 4" lumber "does not exist," R. 27, Def.'s Reply Br. at 1, 4, 8, 9, is not persuasive. Menards likens this case to *Ibarrola v. Kind, LLX*, 83 F. Supp.3d 751, 757 (N.D. Ill. 2015). In *Kind,* a consumer sued under ICFA because a KIND snack food box claimed it contained "no refined sugars," which she understood to mean sugars that had "not been refined at all." *Id.* at 756-57. In reality, the product contained partially refined sugars, including evaporated cane juice and molasses, which are distinct from fully refined white table sugar. *Id.* at 758. In granting the motion to dismiss, the Court held that no reasonable consumer would expect that a snack product would be sweetened only with raw stalks of sugar cane, because any sweetener ready for consumption must be at least partially refined. *Id.* at 758. That sort of actual impossibility is not at issue here, because it is possible to cut a piece of lumber and surface it to a 4" x 4" size. That is not what the industry does, but it is not actually impossible to create lumber of that height and width.

need not allege that a product's performance was *deficient* in order to state a claim for actual damages under ICFA—just that it plausibly is worth less. *See Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874-76 (App. Ct. Ill. 1998) (noting that Illinois allows "claims for diminished value of an allegedly defective product without the pleading of any damage to the product or person"). Nor must Fuchs and Krasilnikov allege the existence or identity of alternative products they would have purchased, as Menards seems to presume. *See Muir v. Playtex Prod., LLC,* 983 F. Supp. 2d 980, 987 (N.D. Ill. 2013) (citing *Aqua Dots*, 654 F.3d at 751). In *Muir,* the plaintiff successfully pled actual damages when he alleged that the product, a diaper depository, was worth less than what he paid, because it was not the best model in controlling odor as statements on the product's box claimed. *Muir*, 983 F. Supp. at 990; *see also Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 760-63 (Ill. App. Ct. 2005). Similarly, Fuchs and Krasilnikov do allege that they would not have bought the lumber—or would have paid less for it—because there was less of it than expected. Am. Compl. ¶¶ 36, 53, 58, 73. At the pleading stage, those assertions must be accepted as true, so Plaintiffs did adequately allege actual damages under ICFA.

### C. Count Two: Breach of Express Warranty

Fuchs and Krasilnikov further claim that Menards's various signage, labeling, and advertising using nominal size language created an express warranty that Menards breached when its lumber's dimensions did not match its labels. Am. Compl. ¶¶ 56-60. The Plaintiffs assert that Menards warranted that each piece of dimensional lumber would be the particular size according to its name on the labels.

13

To state a claim for breach of an express warranty, the complaint must allege (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty. *See Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 638 (Ill. App. Ct. 2001). Express warranties are considered by Illinois courts to be "contractual in nature," therefore, "the language of the warranty itself is what controls and dictates the obligations" of the parties. *Id.* at 634.

Menards argues first that the express-warranty claim fails because neither Fuchs nor Krasilnikov provided pre-litigation notice of the breach. Illinois law does require that a plaintiff provide notice prior to litigation, so as to give the potential defendant an opportunity to cure the alleged breach. *See* 810 ILCS 5/2-607. But Menards does not grapple with a notable exception: the notice requirement is excused "if the seller already has actual knowledge of the defect of the particular product." *Allstate Ins. Co. v. Daimler Chrysler,* 2004 WL 442679, at *2 (N.D. Ill. Mar. 9, 2004) (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590-91 (1996)). The alleged breach here is that the size of the lumber does not match the label. By its own admission, Menards knows that that lumber with the 4 x 4 label in its stores actually is 3 ½ inches by 3 ½ inches. Def.'s Br. at 9. So Menards admits that it knows of the alleged breach; of course, Menards does not believe it is a breach

14

(and Menards is right), but there is no need for notice when the seller has actual knowledge. The lack of pre-litigation notice is not fatal to the warranty claims.

Still, however, the express-warranty claim must be dismissed. The lumber's labels are the only place where an express warranty could arise from. But a claim of breach of express warranty requires an allegation of an "affirmation of fact or promise." *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1057 (Ill. 2007). As this Opinion explained in dismissing the ICFA claim, the labels and advertisements at issue do not make any misleading statements about the size of the lumber, and there are no other statements amounting to Menards' making an assertion that could act as an express warranty. *See Galanis*, 2016 WL 6037962, at *4 (dismissing claims for breach of express and implied warranties based on lack of deceptive statement). The express-warranty claim is dismissed.

### D. Count Three: Breach of Implied Warranty

Next, Fuchs and Krasilnikov allege a claim for breach of implied warranty of merchantability, in that Menards's lumber products were not fit for sale because the labeled dimensions differed from the actual dimensions. Am. Compl. ¶¶ 66-67. "To state a claim for breach of the implied warranty of merchantability under Illinois law, a plaintiff must allege that (1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Lambert v. Dollar Gen. Corp.*, 2017 WL 2619142, at *4 (N.D. Ill. June 16, 2017). To be merchantable, the goods must be "fit for the ordinary purpose for which the

15

goods are used," but must also "conform to the promises or affirmations of fact made on the container or label if any." 810 ILCS 5/2-314(2)(c), (2)(f).

Here again Menards argues that the Plaintiffs failed to give pre-litigation notice, but as discussed earlier, lack of pre-litigation notice is excused because Menards had actual knowledge of its own labelling practices. But the same rationale that dictated dismissal of the express-warranty claim applies to the implied-warranty claim: Menards made no actionable affirmation of fact or promise on the dimensional lumber labels. *See Galanis*, 2016 WL 6037962, at *4 (dismissing implied warranty claim based on lack of deceptive statement); *see also* 810 ILCS 5/2-314(2)(f). Finally, as discussed in connection with the ICFA claim, the lumber itself was merchantable, because it would "pass without objection in the trade" and there was no misleading statement, so it was "adequately contained, packaged, and labeled." 810 ILCS 5/2-314(2)(a), cmt. 2; 810 ILCS 5/2-314(2)(e). The implied-warranty claim is also dismissed.

### E. Count Four: Unjust Enrichment

In their final claim, the Plaintiffs allege that Menards is unjustly enriched by the revenues received from sales of its inaccurately labeled dimensional lumber products. Am. Compl. ¶ 73. To state a claim for unjust enrichment, Fuchs and Krasilnikov must allege that Menards unjustly retained a benefit at their expense. *A.P. Properties, Inc. v. Rattner*, 960 N.E.2d 618, 622 (Ill. App. Ct. 2011). Because Fuchs's and Krasilnikov's fraud-based claims have been dismissed, the unjust enrichment claim must also be dismissed. Although fraud itself is not an

"indispensable element" of unjust enrichment, here the Plaintiffs' particular allegations of unjust enrichment rely on the allegedly fraudulent labeling. When an unjust enrichment claim is specifically premised on the allegedly fraudulent nature of a representation (as it is here), but the representation is not fraudulent, then the unjust enrichment claim must fail too. *See Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2006); *Spector v. Mondelez Int'l, Inc.* 178 F. Supp. 3d 657, 674 (N.D. Ill. 2016) (dismissing unjust enrichment claim that was "predicated on the same allegations of deceptive advertising as Plaintiffs' ICFA and breach of express warranty claims.").

### F. Personal Jurisdiction

Because dismissal under Rule 12(b)(6) is appropriate, the Court need not address whether the Court has personal jurisdiction over Menards as to the out-of-state claims alleged by the out-of-state (and not yet certified) class members. Typically, district courts must address personal jurisdiction as a threshold issue in a suit, particularly before evaluating claims on the merits. But when considerations of "convenience, fairness, and judicial economy" warrant it, courts may momentarily set jurisdictional questions aside. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007).

Here, Menards does not dispute personal jurisdiction as to the claims of the current Plaintiffs, who are Illinois citizens bringing claims arising from purchases at Menards's Illinois locations. Rather, Menards preemptively attacks personal jurisdiction for out-of-state class members who are not yet plaintiffs in this

17

proposed, but uncertified, class action. Addressing the claims of absent proposed class members that *might* arise under laws of other states is not appropriate at this stage, and neither is assessing personal jurisdiction of Menards for those yet-to-be realized claims. In light of the dismissal of the Plaintiffs' claim, the Court need not elaborate on personal-jurisdiction issues as to claims arising in other States. *See Halperin v. Int'l Web Servs.,* LLC, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) ("[B]ecause Halperin has not adequately pleaded a consumer fraud claim under Illinois law … he cannot represent either an Illinois class under the ICFA or a multi-state class under the other nine States' consumer fraud laws.").

### IV. Conclusion

For the reasons discussed above, Menards's motion to dismiss is granted across the board. The dismissal is with prejudice, because the Plaintiffs have already amended the complaint once and because they do not ask in their response brief, R. 26, for another chance to amend the complaint. Of course, the class-based claims for the uncertified class are dismissed without prejudice. A separate AO-450 judgment shall be entered, and the status hearing of October 4, 2017 is vacated.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 29, 2017